P77DUSAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                              24 CV 03973

LIVE NATION ENTERTAINMENT,
INC., ET AL.,

                    Defendants.           Conference
------------------------------x           New York, N.Y.
                                          July 7, 2025
                                          4:30 p.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                          District Judge

                         APPEARANCES

DEPARTMENT OF JUSTICE, ANTITRUST DIVISION
     Attorneys for Plaintiffs
BY:  BONNY SWEENEY
     JOHN THORNBURGH

COHEN & GRESSER, LLP
     Attorney for Defendant SeatGeek
BY:  RONALD F. WICK

CRAVATH, SWAINE & MOORE, LLP
     Attorneys or Defendants
BY:  LAUREN ANN MOSKOWITZ

P77DUSAC

```
1            (Case called)
2            THE COURT:  Good afternoon.  We're here for a
3    discovery conference in 24 CV 3973.  Let's have appearances,
4    starting with the plaintiffs.
5            MS. SWEENEY:  Good afternoon, your Honor.  Bonny
6    Sweeney, for the United States.
7            THE COURT:  Good afternoon.
8            If you're going to be speaking, then we can forego
9    additional appearances, but is anyone else planning to speak on
10   the plaintiff's behalf?
11           MR. THORNBURGH:  Good afternoon, your Honor.  John
12   Thornburgh.  I don't believe I will need to be speaking, but
13   I'm on, depending on the issues your Honor wants to address.
14           THE COURT:  All right.  Very good.
15           Who do we have from SeatGeek?
16           MR. WICK:  Good afternoon.  Ron Wick, your Honor, for
17   SeatGeek.
18           THE COURT:  Good afternoon.
19           Who do we have for defendants?
20           MS. MOSKOWITZ:  Good afternoon, your Honor.  Lauren
21   Moskowitz from Cravath, for the defendants.
22           THE COURT:  Very good.  So, Ms. Moskowitz, let me
23   start with you.  In terms of these 12 custodians that you'd
24   like the text messages and Slack conversations for, the
25   obvious -- the way I look at the application is really that
```

P77DUSAC

1    SeatGeek is moving to quash the subpoena to the extent that

2    you're seeking these additional searches, and so what they

3    would need to show -- I believe you've shown relevance and

4    proportionality.  So SeatGeek says there's undue burden, and

5    they say it indirectly.  They say that for months and months

6    the parties have worked out a protocol relating to other

7    documents, and it would be unduly burdensome essentially to add

8    in these additional 12 searches at the end.

9           And I'll give you the opportunity to respond, to just

10   address why it's not really any burden at all to add in these

11   text messages and Slack conversations.

12          MS. MOSKOWITZ:  Thank you, your Honor.

13          I certainly agree with your characterization, and I

14   don't think that the fact that this is coming up now creates a

15   burden.  These documents were requested on day one.  The

16   definition of "communications" clearly included them, and the

17   notion that -- we assumed that they were part of what we were

18   going to be producing this whole time, as it would be expected,

19   unless they told us they weren't going to.  And so the notion

20   that it was our burden to micromanage and chase and make sure,

21   are you definitely producing every single type of

22   communications we requested, that's certainly not how this is

23   supposed to work.  The same way that if the CEO of SeatGeek had

24   a notebook on his desk saying, "my three step plan to take down

25   Ticketmaster," I don't have to ask them, are you definitely

P77DUSAC

1    producing every notebook your custodians have that are

2    relevant.  It's their obligation to do that, because we asked

3    for them.

4              THE COURT:  I'm sorry, Ms. Moskowitz.  If I can

5    interrupt, that's where the parties take different views of

6    what happened, and there are emails and months worth of emails

7    where people focused on one particular set of the documents,

8    meaning the emails, and then they had email -- other documents

9    to go get that were outside of the emails that did not include

10   these text messages.  I don't know if I have to resolve what

11   happened and whether it fell through the cracks on both ends.

12             Now, I don't have to resolve, I don't think, whether

13   what really happened, as often happens in litigation, is that

14   the night before a deposition, or maybe even during a

15   deposition, or right after a deposition, someone talks to one

16   of their colleagues and says, where are all the text messages

17   and Slack conversations; and then someone says, oh, yeah, we

18   forgot about that.  That might have happened on both sides, so

19   that's water under the bridge.

20             Right now I'm really concerned with what do you want

21   SeatGeek to do.  Do you want to call these 12 people and say,

22   hey, just send over these text messages that have anything to

23   do with this case?  Because that might not be very burdensome.

24   Do you want them to extract the phones and devices and then run

25   a bunch of search terms, just like you did with everything

P77DUSAC

```
1    else, because that would seem a little bit more burdensome.  So

2    what do you want them to do exactly?

3            MS. MOSKOWITZ:  I think with respect to -- Slack and

4    text messages of course are two separate categories.  I think

5    text messages they should do to confirm, and we already have,

6    with some of the witnesses, that they do text for business and

7    that they should -- I mean, frankly, it's easier to collect the

8    text messages and pull the relevant conversations rather than

9    have individual custodians be sorting through and

10   screenshotting their relevant communications.  That seems to be

11   the more burdensome approach, as opposed to having a vendor

12   pull them and actually just produce the relevant text messages

13   that the lawyers can review for privileges and for

14   responsiveness.

15           And as to Slack messages, I don't think that it's

16   burdensome to go collect the relevant channels and individual

17   messages directly between the 12 -- with the 12 custodians.  If

18   they think that certain search terms are appropriate, then they

19   can tell us that.  I mean, there was a set of search terms

20   used.  We did engage with them again to try to come up with a

21   list of search terms.  We're not saying they have to.  If

22   they're representing the volume is unduly burdensome, we can

23   certainly work with them to come up with a subset of all of the

24   Slack messages, but the notion that there are so many is sort

25   of our point that we are entitled to them.  So, we are willing
```

P77DUSAC

 1    to work with them to come up with a reasonable approach to

 2    collect and produce the responsive material.

 3          THE COURT:  All right.  Mr. Wick, I'll let you

 4    respond.  So, again, just to frame things, this is coming up as

 5    a motion to compel, but I think the way it should have actually

 6    come up is in a motion to quash, because when we have a

 7    subpoena, it's a demand to produce documents.  So what

 8    typically happens is that the receiving party will move to

 9    quash, and then at that point, as I said, relevance and

10    proportionality, that's been shown.  The burden flips to you to

11    show undue burden, and, in that respect, you rely on the

12    agreement.

13          I want to put that agreement aside for a moment.

14    Understanding the parties worked out certain things, I think

15    it's fair to say Slack communications and text messages simply

16    weren't part of the agreement.  You may be right that the

17    assumption was that was sort of put to the wayside to get an

18    agreement on these other things, but the other side is also

19    right that it just wasn't specifically addressed in the context

20    of the agreement.

21          So what I'm really focused on now is undue burden.  So

22    sitting here today, can you go and get these 12 custodians'

23    texts and Slack communications or no, it actually is this huge

24    burden?  Talk to me about what the problems are with that.

25          MR. WICK:  Certainly, your Honor.  And let me start

P77DUSAC

1    with the text messages.  I understand you want to talk about

2    the agreement itself, but I think when you talk about 12

3    custodians -- I mean, we take issue.  We think 12 custodians is

4    an overbroad number of custodians given SeatGeek's connection

5    to the case and given SeatGeek's role as a third party.

6         And we agreed that -- the 12 custodians exclusively in

7    connection with those search terms in those emails.  I want to

8    say that at the outset.  Twelve is overbroad.

9         THE COURT:  Hypothetically, if I were to say three

10   custodians of the defendant's choosing, then, tell me, is there

11   a burden, or no, not really?

12        You're not going to, like, quash the subpoena on the

13   basis of the agreement, and then the emails over the last few

14   months, then three custodians -- we could do that, but what I

15   don't understand and what you could teach me is what it

16   involves in terms of getting the text and Slack messages.

17        MR. WICK:  Sure.  For the text messages, assuming the

18   number we're talking about are existing SeatGeek employees,

19   because not all 12 are current SeatGeek employees, so the

20   devices would not be in SeatGeek's control, but beyond that,

21   the burden involved, as I understand it, in getting what

22   defendants are willing to allow here would be we would actually

23   have to either take the devices or ask our employees to, you

24   know, download those devices in their entirety, including

25   whatever private investigations and private material is on

P77DUSAC

1    them.  We'd have to have a vendor go through and isolate work

2    related threads based on what the employee's telling us, and

3    isolate those, and go through the thread in its entirety, some

4    of which may go back years.  We're not sure on that.

5        I will represent at least the priority executives were

6    told the substantive testing for businesses is not particularly

7    common.  It's generally more for scheduling and things like

8    that.

9        For Slack, we need to get a better handle on the

10   burden.  We understand that there are more than 26,000 active

11   and archived Slack channels within SeatGeek's database.  We

12   would have to, in order to identify -- and it's not clear to me

13   whether defendants are seeking every channel that somebody's

14   ever accessed, which is referenced in at least one of the

15   emails, if it's narrowed in some other way, a channel in which

16   somebody has posted, but to identify that, we'd have to export

17   the entire database, at whatever cost that would involve.

18       I understand, once we do this, we could run searches

19   and identify each channel that every custodian has had some

20   connection with.  Not clear to be exactly what that is.  We

21   would then have to do that.  And up until now, we've been told

22   that the defendant's search terms are inappropriate.  If

23   they're changing their view on that, that might be something

24   that would lessen the burden, but up until now, we've been in a

25   position where we're told we would have to go through each one

P77DUSAC

1    of those channels if it might contain information responsive to

2    one of their 89 requests, and go through, you know, every

3    message, everyone of those channels, potentially for some

4    years, and identify anything that's -- you know, that is

5    responsive to this subpoena.

6            THE COURT:  Okay.  So is your proposal -- on the

7    assumption that some number of these custodians are fair game

8    for the subpoena, would your proposal be to run the search

9    terms that the parties already agreed upon on the texts and

10   Slack communications that you're -- for those custodians?

11   Would that be your proposal?

12           MR. WICK:  Well, if you're requiring to make the

13   proposal, I think it would be certainly narrowing down the

14   custodians.  You know, one thing that we had proposed was to,

15   you know, run a search term on channel names, and try to, you

16   know, sort of water down -- not water it down, by narrowed down

17   search terms on channel names, and look for channel names that

18   might be responsive, and come up with some number working with

19   defendants to identify some priority where that could be done,

20   and then review those channels.

21           THE COURT:  All right.  From your perspective, now I

22   through out three, but who are we talking about here from

23   SeatGeek?  What would be your bid on the number of custodians?

24           MR. WICK:  I would think -- I would think a reasonable

25   number.  I mean, I would go with probably the five that they

P77DUSAC

1    identified as priority custodians, whose depositions were

2    taken.

3              THE COURT:  All right.  Let me turn back to

4    Ms. Moskowitz.  So even though I through out three, Mr. Wick is

5    so gracious that he proposed five.  So what's your response to

6    all this?  How do you want to do this in a way -- let me take a

7    step back.  How do you want to do this in a way that's not

8    going to disrupt discovery?  Because I think, in fairness, this

9    is something that, had the parties just kind of, like, thought

10   about it, you would have addressed this months ago, when

11   everything else was being worked out in terms of the subpoena.

12             So given what SeatGeek has said, and they have the

13   supporting document on their opposition, and they put that in,

14   I think it behooves everyone to see if there's a reasonable way

15   to get this done that's not going to take a ton of time.  So

16   put to the side the number of custodians issue.  If we figured

17   out the number of custodians, do you think you could speak to

18   Mr. Wick and come to an agreement how this is going to be done,

19   understanding where we are in discovery?

20             MS. MOSKOWITZ:  Of course.  On the number of

21   custodians, even though you told me to set it aside, we did

22   offer narrowing it down to eight.  So I suspect even with five

23   and eight, somewhere we can reach a resolution.  And on, you

24   know, approach, I've done Slack messages protections in other

25   cases.  I'm sure others on the call have as well.  When you're

P77DUSAC

```
 1   talking about channels, you speak to your client and you find
 2   out which channels are relevant.  And then, you know, we have a
 3   protocol, that your Honor already entered, into how those text
 4   messages and Slacks are supposed to be grouped and produced,
 5   and running search terms on those.
 6           So it's not like every single message for years and
 7   years.  Of course we don't expect that.  So I do think that
 8   whether it's -- it may not be the exact same search terms, but
 9   I'm sure that we can come together and meet and confer about a
10   set of search terms to apply to the instant messages.  I think
11   texts are a little bit trickier, just because the way people
12   communicate on text isn't always as conducive to the way we run
13   search terms on emails.  But I'm happy to meet and confer on
14   how best to identify the relevant text messages for the
15   attorneys to review and get out the door.
16           And certainly it's all sensitive to the time here, and
17   we want to do get it done and done efficiently, and in time to
18   use them.
19           MR. WICK:  Your Honor.
20           THE COURT:  All right.
21           MR. WICK:  This is Ron Wick.  May I respond?
22           THE COURT:  Yes.  Go for it.
23           MR. WICK:  I'm concerned, because this is not an
24   ordinary subpoena.  And working with Slack and past
25   experiences, I'm not sure how well that information -- this
```

P77DUSAC

1    subpoena, it's facially overbroad, and it covers almost all

2    aspects of the company.  So going through and identifying, you

3    know, identifying channels that might have relevant

4    information, while we define relevance very differently from

5    defendant, using anything that approximates their definition of

6    relevance, this is not -- this is not a handful of channels

7    that contains potentially responsive information.  They're

8    asking about everything from product innovations to, you know,

9    documents regarding particular contracts.  This has been a lot

10   of responsive channels, maybe more responsive than not

11   responsive.  So I think it's not that simple.

12          THE COURT:  Well, there was no motion to quash filed,

13   and so that's what's creating the issue where I'm trying to

14   work this out in realtime on this call.  However, I will hear

15   you if there are disputes that the parties can't resolve, and I

16   think Ms. Moskowitz understands that given where we are in

17   discovery, basically at the tail end of fact discovery, I will

18   be receptive to arguments that you might make that, because of

19   the breadth of the search that's being demanded, it would pose

20   an undo burden.

21          That doesn't mean I'm going to rule in your way in

22   every type of curtailment of the discovery that you suggest.

23   However, I understand where we are.  I think we all understand

24   where we are, and I think everyone wants to be reasonable about

25   what they're looking for and how they're conducting that

P77DUSAC

```
 1   search.

 2           But before I kind of -- let's put a pin in that for a

 3   moment.  Let me turn to the plaintiffs here and ask them.

 4   Ms. Sweeney, your response is agnostic I suppose as to whether

 5   the motion to compel would be granted, but you have various

 6   things that you want to kind of make a record about in terms of

 7   safeguarding the plaintiff's rights.  I don't believe either

 8   Live Nation or SeatGeek responded to the three things that you

 9   asked for.

10           So I guess really the question is more, Ms. Moskowitz,

11   do you have any issues with what Ms. Sweeney requested in terms

12   of their letter?

13           MS. MOSKOWITZ:  Yes, your Honor.  Thank you.  Lauren

14   Moskowitz again.

15           The request for additional depositions time, if any,

16   not counting, again, the 300-hour allotment, but of course ours

17   would, we don't agree with that.  We don't think there's any

18   reason to do that.  Deposition time is deposition time, and if

19   they want to ask questions about the same documents, then that

20   should count.  So we just don't see a need for carving this out

21   in any way from our otherwise applicable deposition limits,

22   which there's plenty of time left on for all of us.

23           The second request about supplementing expert reports

24   to account for the new documents, I don't -- I didn't really

25   see an argument for why they would impact.  Of course, if they
```

P77DUSAC

1    do, I think we should just take that up then, if they think

2    that they actually need to supplement it after we've all

3    evaluated the documents.  So I don't think that's ripe.

4            And, you know, we certainly don't want, on a third

5    request, anything to impact the schedule.  We heard your Honor

6    loud and clear that the trial is scheduled, and we are going to

7    move quickly.  And of course, depending on when these documents

8    actually get in our hand, we may be seeking a bit of relief on

9    when the depositions -- if additional depositions need to

10   happen, when they would happen.

11           And then maybe we'll bleed past the close of fact on

12   an ad hoc basis, which of course the parties are already doing

13   here and there by agreement.  So, you know, certainly that's

14   the flexibility we would look for on the schedule, but we

15   otherwise intend to stick with the rest of the schedule as your

16   Honor has just updated the order.

17           MS. SWEENEY:  Your Honor, this is Bonny Sweeney.  Can

18   I respond?

19           THE COURT:  Yes.

20           MS. SWEENEY:  Yes.  So, first of all, we just -- as

21   your Honor is probably aware, we've all worked very hard to

22   take the depositions within the 300-hour allotment.  We've

23   taken, according to my count -- well, before today -- we took I

24   think two today -- 75 depositions so far.  We've used 210 of

25   our 300 hours.  We have another nine depositions this week, 18

P77DUSAC

1    more scheduled, 10 to go, and we are running into real serious

2    barriers in terms of the amount of time we have left and the

3    number of depositions we want to take.

4            It is an issue that the defendants should have noticed

5    a long time ago.  They waited until the very end of discovery

6    to raise it.  I don't anticipate that there are a lot of

7    documents produced that will require a lot of deposition time,

8    but if there is some time in the deposition schedule that is

9    devoted to those text messages and Slack chats that are

10   produced, then plaintiff shouldn't bear the burden of

11   defendant's lateness in filing this motion and in bringing it

12   to the Court's attention.

13           So, we feel very strongly that we shouldn't be bearing

14   this burden.  We're not asking for a lot, just that that time

15   not count against our 300 hours.

16           THE COURT:  All right.  So, in terms of the

17   plaintiff's request, I think the truth is that none of the

18   production that's going to happen is really going to impact

19   deposition time in any meaningful way, and it should not impact

20   the schedule otherwise.  However, if it does, because there are

21   just, you know, red hot documents produced by SeatGeek and they

22   have to be addressed with additional deposition time, then I'll

23   hear the plaintiffs make an application to extend that

24   allotment.  You can do that very simply, and explain the

25   situation, and we'll make accommodations that are reasonable.

P77DUSAC

1      In terms of the supplementation of expert reports, I

2  think that that has to happen.  If there are documents that are

3  produced after, for instance, August 1st, and those have to be

4  taken into account by the experts, I think it would be unfair

5  to prevent those experts from addressing those in the

6  supplement.  It wouldn't be long.  It shouldn't be long,

7  because, as I understand it, what the defendants are really

8  hunting for are documents that are similar in kind to other

9  documents that they have.

10      So there shouldn't be really much of an amendment that

11  would be necessary, but I think those are things we can deal

12  with without really upsetting the schedule.  So I think that's

13  how we'll deal with the plaintiff's response.

14      So, getting back to the actual motion to compel, on

15  that, I think the issue for the Court is that the devil is sort

16  of in the details here.  What I'm going to say now is that I

17  think the parties should work on six custodians and figure out

18  how the search is going to be done.  That's not to say that any

19  real search can be done, because the parties haven't sat down

20  and tried to work this out, or if they have, they haven't

21  apprised the Court on what the discussions have been.

22      So, I'm going to ask Mr. wick and Ms. Moskowitz to sit

23  down over the next few days, and if there are disagreements

24  about what would be produced and searched for, could you get

25  the Court an update by next Monday, which is the 14th?

P77DUSAC

1        MS. MOSKOWITZ:  Yes, your Honor.  Thank you.

2        MR. WICK:  This is Ron Wick.

3        I believe we can do that, your Honor.  One more thing

4   that I would like to add, if I could.  We would -- in terms of

5   the burden, I mean, we are where we are in large part because,

6   at a minimum, this is something that the defendants sat on for

7   almost three weeks, and had we dealt with this and brought this

8   to the Court's attention much earlier, we'd be in a very

9   different position.

10       I understand you said we didn't file a motion to

11  quash, but we did timely object, and we though we resolved any

12  potential differences to our agreement.  Given where we are at

13  this point, we would ask that the additional cost of this

14  additional discovery be borne by the defendants and not by

15  SeatGeek.

16       THE COURT:  Do you know what the cost is going to be?

17  You don't, right, because you haven't figured out what exactly

18  is going to be searched for?

19       MR. WICK:  That's correct.  Our first step would be

20  the database.

21       THE COURT:  Here's the thing.  That's a fair point.

22  The timing of the parties' discussions may not have been

23  sufficient or really even bear on the issue of undue burden,

24  but there's a request for some allowance in terms of the costs

25  here, because, as a third-party non-participant in this case,

P77DUSAC

 1    despite what the defendants say about SeatGeek's involvement

 2    and kind of being the impetus for a lot of what's in the case,

 3    they are a non-party.  They have spent a considerable amount of

 4    money I am sure in complying with the subpoena to date.

 5            So, Ms. Moskowitz, I hope that if there's a reasonable

 6    request for costs that is provided to you, you will take that

 7    into account, and hopefully the parties will come to an

 8    agreement.

 9            But I'll ask, Mr. Wick, if there's a disagreement when

10    I get the submission on Monday, which -- let me be clear about

11    that.  What I'm hoping is to get a joint submission from

12    SeatGeek and defendants that outlines areas of disagreement,

13    and if there's an area of disagreement pertaining to costs,

14    then that is something you can include in that joint

15    submission.  So, that will have Live Nation's submission on

16    their position, and then SeatGeek's submission on any areas

17    they disagree, and then I'll resolve those issues.

18            The outstanding issue is what the timing of production

19    is going to be based on what is requested, and does anyone have

20    a sense of that?  You probably don't, because you haven't

21    worked out the details, but what are the parties thinking?

22    I'll hear from Ms. Moskowitz and then Mr. Wick.

23            MS. MOSKOWITZ:  Thank you, your Honor.

24            At the risk of going backwards just for a moment, and

25    I imagine you don't want to hear anything because you already

P77DUSAC

1    said you didn't about why we raised it when we did and all of

2    that, but I do just have to say, it is not accurate to say we

3    waited on this.  We learned about it when we learned about it,

4    and it is what it is, but I don't think that we have been

5    belated in this in a way that would punish us by needing to pay

6    for what they should have done all along and didn't ever object

7    to in writing or otherwise.

8         So I don't think that it's automatic that they should

9    be getting the cost of this by us, but we will include -- if

10   there is a disagreement on this, we will include it as your

11   Honor asked.

12        And as to timing, I think that -- I think that

13   certainly it will be a balance of scope and timing, and so

14   certainly we are interested in getting these documents sooner

15   rather than later, and we will be on our side factoring that in

16   when we make a request for terms and scope and things like

17   that.  But I think certainly we really do need to move quickly,

18   such that I would hope that we would have the production in our

19   hands in a couple of weeks, so that we can review them, get any

20   additional deposition schedule that we need to, and be done

21   with it.

22        I just don't know -- I mean, they could start

23   collecting this stuff now.  They don't have to wait for us to

24   have agreement on search terms.  So I would like them to get

25   going right now if they haven't started already in potentially

P77DUSAC

1    being in this situation today so we can hit the ground running

2    when we speak.

3        THE COURT:  Yes.  We'll see where we are on Monday.

4    That would be my expectation, too, that whatever is agreed to

5    -- whatever is going to be produced and whatever I would order

6    would be the kind of materials that could be produced within a

7    matter of weeks and not a matter of months, given the volume.

8    So people should be mindful of that as they're having their

9    discussions.

10        From the defendant's perspective, the letter starts

11   out by noting there are particular communications that are the

12   basis for thinking that there are relevant communications in

13   this category.  So what I would suggest is you try to be rifle

14   shy in terms of what you're asking for, because while you might

15   leave some documents by the wayside, you might be able to

16   target documents that would really interest you and also save

17   time and resources on all ends in terms of searching for those

18   documents.  I invite the parties to see if they can save some

19   time and resources on both ends.

20        Mr. Wick, do you have any response, or are we good to

21   go?

22        MR. WICK:  I think, as you said, your Honor, the devil

23   is really in the details in terms of timing.  If it's one that

24   requires us to hire contract attorneys -- we've used about 30

25   to date, and we went through all this in 10 weeks.  And they've

P77DUSAC

1    been released.  So it will take some time, but to the extent

2    we're talking about a matter of weeks, then, yes, we would hope

3    that dictates the scope.

4           THE COURT:  All right.  From your perspective --

5    here's what I'll suggest for Ms. Moskowitz, and you should be

6    prepared to speak about this no later than tomorrow, because

7    otherwise it will be hard for you to come up with a plan by

8    next Monday.

9           In the meantime, from your perspective -- all I've

10   heard from SeatGeek thus far, because it's the nature of the

11   parties' positions, not to disparage anyone, is -- I haven't

12   heard about the actual mechanics of this.  You might think the

13   next 12 to 24 hours how would we -- what kind of proposal can

14   we come up with that would actually get to relevant documents

15   that is something you can do fairly efficiently, because I'll

16   be, as I said, receptive to that kind of proposal.

17          What won't be helpful is if the parties disagree about

18   everything and SeatGeek doesn't want to turn over any relevant

19   documents, but, on the other hand, defendants want everything

20   in the universe.  All right?

21          So try to avoid that on both sides.  See what you can

22   think of that would get to the relevant documents here but

23   would be efficient, and we'll see if there's any disagreements

24   come Monday.

25          MS. MOSKOWITZ:  Will do.  Thank you, your Honor.

P77DUSAC

| | |
|---|---|
| 1 | THE COURT:  Yes.  All right.  Anything else from the |
| 2 | plaintiffs, defendants, or SeatGeek? |
| 3 | MS. MOSKOWITZ:  This is Lauren Moskowitz again for |
| 4 | defendants.  Nothing for now, but just to put it on your |
| 5 | Honor's radar, to the extent it does need to rise to the level |
| 6 | of the Court, we are also in discussions with SeatGeek over |
| 7 | some follow-up on the 30(b)(6) testimony that has been going |
| 8 | on, and we're hopeful that the parties will reach a resolution. |
| 9 | I think we will know that by the end of the week. |
| 10 | And so to the extent we reach impasse, which I hope we |
| 11 | won't, but if we do, we'll be coming to the Court promptly. |
| 12 | But hopefully you won't hear another thing on that from us. |
| 13 | THE COURT:  Okay.  I do so hope, but I think this is |
| 14 | just on the scope of the notice, or what are we talking about? |
| 15 | MS. MOSKOWITZ:  No.  It's actually follow-up.  The |
| 16 | 30(b)(6) notice had been served, negotiated, and testimony |
| 17 | started.  So there's some follow-up on the level of testimony |
| 18 | on certain topics and whether they can give us some follow-up |
| 19 | information and things like that.  So we're trying to work |
| 20 | through that, those types of issues. |
| 21 | THE COURT:  Meaning questions were asked.  The witness |
| 22 | may not have known the answers.  So you're trying to resolve |
| 23 | that through written questions or materials produced by |
| 24 | SeatGeek?  Is that fair? |
| 25 | MS. MOSKOWITZ:  Exactly. |

P77DUSAC

1          THE COURT:  Well, we've all been there, and usually

2     these issues get worked out.  So if there's any dispute, you'll

3     let me know.

4          MS. MOSKOWITZ:  All right.  Thank you.

5          THE COURT:  Thank you, everyone, for joining.  If

6     there's anything further, let us know.  Otherwise, we'll put in

7     an order outlining the schedule for the motion.

8          Thank you very much.

9          (Adjourned)