January 16, 2026

**VIA ECF**

The Honorable Arun Subramanian
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Courtroom 15A
New York, NY 10007

Re:   *United States et. al. v. Live Nation Entertainment, Inc. and Ticketmaster LLC,* No. 1:24-cv-03973-AS

Dear Judge Subramanian:

Non-party Oak View Group, LLC ("OVG") respectfully requests that this Court redact the designated portions of Exhibits 141, 146, 147, 148, and 205 to Plaintiffs' Counterstatement of Material Facts in Support of Their Opposition to Defendants' Motion for Summary Judgment (ECF No. 763) and Exhibit 141 to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 755). OVG's request to redact these documents is narrowly tailored, only requesting to redact those portions of the documents that reflect confidential material that could harm OVG's competitive standing were the information made public.

While courts recognize a general right of public access to court records and proceedings, that right of access is not absolute and courts may deny public access where appropriate. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). "To determine whether documents should be placed under seal, a court must balance the public's interest in access to judicial documents against the privacy interests of those resisting disclosure." *Application of Utica Mut. Ins. Co. v. INA Reinsurance Co.*, 468 F. App'x 37, 39 (2d Cir. 2012) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)). Courts possess the authority to redact judicial records when such measures are "narrowly tailored" to the interests at issue and "essential to preserve higher values." *In re Digit. Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017).

Courts may redact documents to avert "[p]otential damage from the release of sensitive business information" and to protect from the disclosure of information that may harm a business's ability to compete in the future. *Bergen Brunswig Corp. v. Ivax Corp.*, No. 97-CV-2003, 1998 WL 113976, at *3 (S.D.N.Y. Mar. 12, 1998) (collecting cases); *Standard Inv. Chartered v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009).

The privacy interests of non-parties are entitled to special weight. *See SEC v. Telegram Grp., Inc.*, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) (citing *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) ("[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.")). Such interests are a "venerable common law exception" to the presumption of access. *Amodeo*, 71 F.3d at 1051.

Courts redact or seal sensitive business information where disclosure would cause the producing non-party harm. *See, e.g.*, *In re Digit. Music*, 321 F.R.D. at 81 n.1 (finding that non-

party privacy interests in confidential information relating to competitive pricing data and strategy was sufficient to overcome the presumption of access); *Telegram Grp.*, 2020 WL 3264264, at *3 (finding that non-party interests in the protection of proprietary analyses of investment opportunities outweighed the presumption of access); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (finding that "internal corporate documents that govern investment strategies, [and] information regarding proprietary modeling assumptions" of third parties overcome the presumption of public disclosure).

OVG's documents warrant redactions because they contain sensitive, non-public business information, including internal financial analyses, strategic plans, and evaluations of business opportunities. If made public, these documents "could reveal proprietary analysis and provide competitors with an unearned advantage." *Telegram Grp.*, 2020 WL 3264264, at *3. Public disclosure would allow OVG's industry partners and competitors to gain insight into OVG's business decisions—information that is strictly confidential and not known or shared outside of OVG. *Id.* at *3-4.

Specifically, OVG seeks to redact the confidential, non-public portions of its documents highlighted in yellow in the sealed versions of the filings. OVG's rationale for each redaction is as follows:

- Pls. Ex. 141 (ECF 758-1):
    - Pages 3 and 4 contain contract terms and financial metrics used at OVG's managed venues throughout the country, as well as base service charges and fee splits for different ticketing services provided at OVG managed venues.
    - Page 4 further contains payment schedules between the contracting parties.
    - Pages 5 through 8 contain specific per-ticket inside fee levels, fee caps, and other sensitive business information for OVG's owned and operated venues.
    - Page 9 contains volume targets between the contracting parties.

- Pls. Ex. 146 (ECF 758-6):
    - Pages 84, 85, 88, and 124-126 contains statements about business strategy by OVG's CEO.
    - Page 100 contains contractual financial metrics and strategies.
    - Pages 107-109, 133, 114, contains statements about OVG's industry partners that relate to how OVG conducts its ordinary course business.

- Pls. Ex. 147 (ECF 758-7):
    - This document contains internal deliberation of how OVG analyzes competing bids from ticketing providers, and OVG's key assumptions for assessing proposals for its managed venues.

- Pls. Ex. 148 (ECF 758-8):
    - This document contains information related to OVG's managed venues, including service-chargeable ticket volumes, per-ticket fees, average service charges, sponsorship dollars, and total projected revenue, exposing venue-by-venue performance modeling and margin assumptions. This document further contains a

roadmap of the financial assumptions and evaluation process OVG uses when conducting its ordinary course business operations.

- Pls. Ex. 205 (ECF 762-25):[1]
    - Pages 2, 4, 5, 6, 7, 8, 23, and 25 contain pricing information for OVG's arena alliance business.
    - Page 3 contains information relating to OVG's arena alliance membership, as well as pricing information.
    - Pages 9 and 15 contain OVG's views on future competitive opportunities.
    - Page 10 contains market capitalization information for privately owned companies that OVG partners with.
    - Pages 12, 13, and 14 contain information about OVG's arena alliance strategies and business metrics.
    - Pages 18, 20, 21, 22, 24, and 26 list OVG's key business initiatives and strategies for its arena alliance business.

For the reasons explained above, OVG respectfully requests that the designated excerpts be redacted.

Respectfully submitted,

*/s/ Grant Bermann*

Grant Bermann
MILBANK LLP
1101 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 835-7515
gbermann@milbank.com

*Attorney for Non-Party*
*Oak View Group, LLC*

cc:
All counsel of record (via ECF)

---

[1] Page 4 of Pls. Ex. 205 contains yellow highlighting on "Toronto, ON," "Scottbank Arena," "Vancouver, BC," and "Rogers Arena." These highlights appear on the original, as-produced version of this document. OVG does not seek to redact this language.