**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C., <br><br> *Defendants.* | Case No. 1:24-cv-03973-(AS) |

**PROPOSED JOINT PRETRIAL ORDER**

Pursuant to the Court's Order of November 24, 2025, the United States and the States of Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming, the Commonwealths of Massachusetts, Pennsylvania, and Virginia, and the District of Columbia (collectively, "Plaintiffs") and Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster, L.L.C. ("Ticketmaster") (collectively, "Defendants") (together with Plaintiffs, "the parties") jointly submit this proposed pretrial order.  Where the parties have competing proposals, they are set off by double brackets ("[[") and each proposal is preceded by bolded text.

The parties are also submitting as Exhibits 9 through 22 the materials required in Rule 10.B.ii of the Court's Individual Practices in Civil Cases.  Those materials include:

- Ex. 9:  Plaintiffs' Jury Instructions
- Ex. 10:  Defendants' Jury Instructions
- Ex 11:  Redline of Plaintiffs' over Defendants' Jury Instructions
- Ex 12:  Redline of Defendants' over Plaintiffs' Jury Instructions
- Ex 13:  Plaintiffs' Verdict Form
- Ex 14:  Defendants' Verdict Form
- Ex 15:  Redline of Plaintiffs' over Defendants' Verdict Form
- Ex 16:  Redline of Defendants' over Plaintiffs' Verdict Form
- Ex 17:  Redline of Plaintiffs' over Defendants' Voir Dire Form
- Ex 18:  Redline of Defendants' over Plaintiffs' Voir Dire Form
- Ex 19:  Redline of Plaintiffs' over Defendants' Hardship Questionnaire

2

- Ex 20:  Redline of Defendants' over Plaintiffs' Hardship Questionnaire

- Ex 21:  Redline of Plaintiffs' over Defendants' Supplemental Questionnaire

- Ex 22:  Redline of Defendants' over Plaintiffs' Supplemental Questionnaire

## I.     The full caption of the case.

The full caption of the case is provided above.

## II.    The names, law firms, addresses, telephone numbers, and email addresses of trial counsel if not already listed on the docket.

### A.     Plaintiffs' Trial Counsel

Plaintiff United States of America

Bonny Sweeney
  *Co-Lead Trial Counsel*
David Dahlquist
  *Co-Lead Trial Counsel*
Arianna Markel
Curtis Strong
John R. Thornburgh II

United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308

Bonny.Sweeney@usdoj.gov
David.Dahlquist@usdoj.gov
Arianna.Markel@usdoj.gov
Curtis.Strong@usdoj.gov
John.Thornburgh@usdoj.gov

Plaintiff States

Adam Gitlin

Office of the Attorney General for the
District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov

Jonathan H. Hatch

Assistant Attorney General
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov

**B.      Defendants' Trial Counsel**

LATHAM & WATKINS LLP

Alfred C. Pfeiffer
      *Co-Lead Trial Counsel*
David R. Marriott
      *Co-Lead Trial Counsel*
Andrew M. Gass
Timothy L. O'Mara
Jennifer L. Giordano

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

555 11th Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Andrew.Gass@lw.com

CRAVATH, SWAINE & MOORE LLP

Lauren A. Moskowitz

Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

lmoskowitz@cravath.com

**III.    A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction.**

    This action arises under federal antitrust laws and related state laws.  The Parties agree that this Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 15 U.S.C. § 4 and 28 U.S.C. §§ 1331, 1337(a) and over the claims of the United States under 28 U.S.C. § 1345.  The Parties also agree that if Plaintiffs' federal law claims survive, the Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  [[**Plaintiffs' position:**  Plaintiffs assert that the Court should retain jurisdiction over

Plaintiffs' state law claims under all circumstances.  **Defendants' position:** Defendants assert that, to the extent Plaintiffs' federal law claims are dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).]]

IV. **A brief summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted that are not to be tried.**

    A. **Plaintiffs' claims and defenses.**

Plaintiffs claim that, in violation of both federal and state law, Defendants have monopolized, acted unfairly, or otherwise impeded competition in various markets related to music and comedy shows in the live entertainment industry.  Specifically, Plaintiffs allege that Defendants unlawfully monopolized six distinct markets:

1. Primary concert ticketing services to major concert venues: in this market Defendants sell ticketing services to venues for concerts.

2. Primary ticketing services to major concert venues: in this market, the Defendants sell ticketing services to venues for all different types of events.

3. Primary concert ticketing services offered to fans at major concert venues: in this market Defendants sell concert tickets and related services to fans.

4. Use of large amphitheaters by artists: in this market Defendants sell the provision of access to large amphitheaters, and ancillary services, to artists who want to perform in amphitheaters.

5. Concert booking and promotion services to major concert venues: in this market Defendants sell venues services to help them book and promote shows.

6. Promotion services to artists performing in major concert venues: in this market Defendants sell promotion services to artists.

Plaintiffs claim that Defendants' conduct has harmed competition in each of these markets, and thereby harmed artists, venues, and ticket-buying fans.

Plaintiffs also claim that, in violation of both federal and state law, Defendants engaged in exclusive dealing, by entering into ticketing contracts with venues that blocked competition from other ticketing companies, and have tied the use of their amphitheaters to the purchase of promotion services.

### B.    Defendants' defenses.

Defendants deny all allegations of illegal conduct.  Defendants assert that Plaintiffs' alleged markets are not properly defined, that all alleged conduct was lawful, pro-competitive and/or based on legitimate business and economic justifications, and that none of the conduct Plaintiffs allege caused any cognizable anticompetitive effects.  Defendants further contend that State Plaintiffs lack standing to prosecute their claims, no State Plaintiff is entitled to damages, and State Plaintiffs are not entitled to damages outside the applicable statute of limitations periods.

## V.    A statement as to the number of trial days needed and whether the case is to be tried with or without a jury.

1.    Based on the Court's guidance at the December 18, 2025 conference, the parties estimate the trial of this matter will require 20 to 25 full trial days, including jury selection, opening statements, and closing arguments.  Consistent with the Court's Individual Practices, the parties agree on a 9:00 a.m. start time for trial each day, with a short break from 11:30 a.m. to noon.  The parties disagree about the trial end time each day. [[**Plaintiffs' position:** Plaintiffs' request a 3:00 p.m. end time.  **Defendants' position:**  Defendants defer to the Court's default schedule of "9 a.m. to 2:30 p.m. or 3 p.m., with one short break from approximately 11:30 a.m. to noon" as stated in its Individual Practices.]]

2.    The trial time will be divided evenly between the sides consistent with the Court's Individual Practices for Hearings and Trials.  Opening statements, direct and redirect examination of a witness called (including by designation), cross-examination of witnesses called by the

opposing party (including by designation), all count toward each side's trial time. Consistent with the Court's Individual Practices for Hearings and Trials, lengthy colloquies before the jury will be split down the middle. The Courtroom Deputy and a representative of each side will keep a running total of trial time used by counsel.

3.    Opening Statements: Plaintiffs (collectively) and Defendants (collectively) may each present an opening statement of no more than 90 minutes, with Plaintiffs' time allocated by agreement among Plaintiffs.

4.    Closing Arguments: Plaintiffs (collectively) may present a closing argument of no more than 120 minutes inclusive of any time reserved for any rebuttal argument, with Plaintiffs' time allocated by agreement among Plaintiffs. Defendants (collectively) may present a closing argument of no more than 120 minutes.

5.    The parties agree that all issues for which the State Plaintiffs have the legal right to a jury trial shall be tried to the jury. The State Plaintiffs maintain that all issues related to liability and damages should be tried to the jury, consistent with the Court's prior orders. As set forth more fully in Defendants' motion for summary judgment, Defendants maintain that State Plaintiffs' claims all fail as a matter of law, which would leave no issues to be tried to a jury. [[**Defendants' position:** As set forth more fully in Defendants' motion to bifurcate, Defendants maintain that it would be prejudicial and confusing to the jury to try to State Plaintiffs' claims, which are subject to statutes of limitations, with the claims of the United States, which are not.]]

## VI.    A joint statement summarizing the nature of the case, to be read to potential jurors during jury selection.

This is a civil antitrust case. The Plaintiffs are the United States of America, a number of individual States, and the District of Columbia. The Defendants are Live Nation Entertainment, Inc. and its wholly-owned subsidiary Ticketmaster L.L.C. Plaintiffs assert claims under federal

antitrust laws and a number of state laws. Plaintiffs claim that each Defendant engaged in alleged anticompetitive conduct in a number of different alleged markets. Defendants contend Plaintiffs' claims are unfounded, their markets are improperly drawn and Defendants assert that their conduct is procompetitive.

**VII.  A list of people, places, and institutions that are likely to be mentioned during the trial, to be read to potential jurors during jury selection.**

Attached as Exhibit 1 is a list of people, places and institutions that are likely to be mentioned during the trial, to be read to potential jurors during jury selection.

**VIII.  A statement as to whether all parties have consented to trial by a Magistrate Judge, without identifying which parties do or do not consent.**

The parties do not consent to trial by a Magistrate Judge.

**IX.  Any stipulations or agreed statements of fact or law to which all parties consent.**

Attached as Exhibit 2 is a list of stipulations or agreed statements of fact or law to which all parties consent. Consistent with the Court's Individual Practices in Civil Cases, the parties have memorialized these stipulations or agreed statements of fact or law in a standalone document that can be marked and admitted at trial.

**X.  A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, whether such witnesses will require an interpreter (and, if so, which party will pay the costs for the interpreter), and a brief summary of the substance of each witness's testimony.**

A.  <u>Lists of Trial Witnesses</u>

6.  The parties have, in good faith, identified the name of each witness they intend to call in their respective cases-in-chief whether in person or by deposition.

7.  Attached hereto as Exhibit 3 is Plaintiffs' witness list and attached hereto as Exhibit 4 is Defendants' witness list.

8.      The parties' witness lists include:  each witness's name, whether such witness will testify in person or by deposition, and a brief summary of the substance of each witness's testimony.  None of the parties' witnesses require an interpreter.

B.      <u>Agreements Concerning Trial Witnesses</u>

9.      Except for good cause shown or as provided herein, a party may not call a witness who is not included in the party's will-call witness list, included in the proposed joint pretrial order, unless agreeable to all the parties or as ordered by the Court.  Both sides retain the ability to call any witness who was included on the other side's [[**Plaintiffs' position:** preliminary or will-call list; **Defendants' position:** will-call list]].  Both sides also retain the ability to call additional witnesses solely for impeachment and rebuttal purposes.  Both sides retain the ability to call any witness that cannot be reasonably anticipated, to the extent allowed by the Court.  Both sides retain the right to object to any witness not identified on the other side's will-call witness list that the other side later identifies they intend to call solely for rebuttal purposes.

10.     By including any of the witnesses on their witness list, the parties assume no obligation to call any witness at trial.

11.     Plaintiffs shall identify the name and anticipated order of each witness they expect to call, including any adverse witness, no later than 10:00 a.m. ET, three business days before the start of trial, *i.e.*, by 10:00 a.m. ET on February 25, 2026.

12.     Plaintiffs shall advise Defendants at least 48 hours before they in good faith believe they have three business days remaining in their case-in-chief.  Defendants shall identify the name and anticipated order of each witness they expect to call, including any adverse witness, within 48 hours of such notification.

6

13.     Defendants shall use best efforts to identify any un-listed rebuttal witnesses that they intend to call no later than one day after the close of Plaintiffs' case-in-chief.  Plaintiffs shall use best efforts to identify any un-listed rebuttal witnesses they intend to call no later than one day before the close of Defendants' case-in-chief.  Defendants shall advise Plaintiffs at least 48 hours before they in good faith believe they have three business days remaining in their case-in-chief.

14.     Each party retains the right to modify its respective witness lists to:  (1) remove witnesses; (2) change the designation of "in person" to "by deposition" (but not vice-versa); and (3) add witnesses who are necessary to lay the foundation for the admissibility of evidence should the parties prove unable to stipulate to admissibility.

15.     [[**Plaintiffs' position:**  If a witness appears as a designation on Plaintiffs' witness list, Exhibit 3, and as a live witness on Defendants' witness list, Exhibit 4, the witness will only testify once, in Defendants' case-in chief.  Because the witness was identified on Plaintiffs' witness list, Plaintiffs will be permitted to go outside the scope during their cross examination.  If Defendants decide, after Plaintiffs' case-in-chief has concluded, to no longer call a witness to testify that appears on their witness list, Plaintiffs have the right to reopen their case-in-chief to call the witness for either live or designation testimony after Defendants have concluded their case-in-chief.  **Defendants' position:**  Plaintiffs should not be permitted to hold open or reopen their case-in-chief after Defendants have concluded their case-in-chief, which would prejudice Defendants.  If Plaintiffs have chosen to call a witness by designation and are concerned that Defendants may not call that witness in their case-in-chief, Plaintiffs should call that witness (either live or by designation) in their case-in-chief.  If Plaintiffs choose to call the witness by designation, those designations would be the testimony from that witness for Plaintiffs' case-in-chief, and Defendants would retain the right to call the witness live in their case-in-chief.  If,

instead, Plaintiffs choose to call the witness live, then both parties would fully examine the witness in Plaintiffs' case-in-chief. Under no circumstances, should Plaintiffs be able to "provisionally" rest their case subject to who Defendants may call in their case, nor should Plaintiffs be able to re-open their case during Defendants' case-in-chief.]]

16.     To facilitate an orderly trial, each party shall identify in good faith the witnesses that they will be calling each day, and whether each witness will testify live or by deposition, at least two days in advance of the day of the witness taking the stand, by no later than 5:00 p.m. ET, or 1 hour after the end of the trial day, whichever is later. For example, a witness expected to be called on Wednesday would be disclosed on Monday no later than 5:00 p.m. ET., or 1 hour after the end of the trial day, whichever is later. Notwithstanding the above, witnesses who will testify on the first day of the trial week will be disclosed by 5:00 p.m. ET, the preceding Friday.

17.     If events at trial cause a party to remove a witness from a party's witness list, the parties agree to notify the other side in good faith as soon as possible, and no later than 6:00 p.m. ET the day before the witness was expected to be called. If a Court ruling the day a witness is expected to be called causes a party to withdraw a witness, that party will notify the other side immediately thereafter. If a party removes, reorders, or withdraws a witness, then the opposing side may assert prejudice due to such a change and, in the event of removal or withdrawal, may call that witness by deposition designation in its own case, subject to the other side's objections and counter-designations. If a party calls a witness by deposition designation in its own case in response to a party's removal or withdrawal as noted above, the party shall be subject to the procedures set forth in Section XI.C below.

18.     Fact witnesses appearing in person shall be sequestered and shall not enter the courtroom except to provide testimony, except that once a fact witness has completed her or his

testimony (including direct, cross, or rebuttal) that fact witness shall no longer be sequestered unless subject to recall.  If a fact witness will testify live more than once (for example, in both Plaintiffs' case-in-chief and Defendants' case-in-chief), then that fact witness shall remain sequestered until he or she has completed all his or her testimony (including direct, cross, and/or rebuttal).  Expert witnesses shall not be sequestered.  [[**Plaintiffs' position:**  Fact witnesses shall generally not be permitted to attend opening statements, except Defendants may identify no more than two individuals on either side's witness list, to attend as Party representatives, provided they are identified to Plaintiffs at least 24 hours ahead of time.  **Defendants' position:**  Federal Rule of Evidence 611(a) provides for the exclusion of witnesses from the courtroom "so that they cannot hear other witnesses' testimony".  The rule does not preclude witnesses from listening to opening statements nor does it require disclosure of who will be present in open court for opening statements.]]

19.    [[**Plaintiffs' position:**  Plaintiffs must call any Plaintiffs' expert economic witness in their case-in-chief, without prejudice to Plaintiffs' ability to recall an expert during their rebuttal case.  Defendants must call any Defendants' expert economic witness in their case-in-chief. **Defendants' position:**  Plaintiffs must call any Plaintiffs' expert witness in their case-in-chief. Defendants must call any Defendants' expert witness in their case-in-chief.  Plaintiffs' proposal seeks to permit Plaintiffs to hold back expert witnesses like Dr. Anderson until a so-called rebuttal case that Defendants do not believe Plaintiffs are entitled to here at all, let alone for witnesses like Dr. Anderson who submitted expert reports in this matter in support of Plaintiffs' case and are not being called to do something that could not have been foreseen during Plaintiffs' case in chief.]] For the avoidance of doubt, nothing in this paragraph restricts the ability of any party's expert to testify during the remedies phase of this case.

**XI.    A designation by each party of deposition testimony to be offered in its case-in-chief and any counter-designations and objections by any other party**

A.    <u>Lists of Deposition Designations</u>

20.    Attached hereto as Exhibit 5 are depositions designations on behalf of all parties for witnesses appearing on Plaintiffs' witness list.  Attached hereto as Exhibit 6 are designations of all parties for witnesses appearing on Defendants' witness list.  There are four witnesses who appear on both parties' witness lists; deposition designations for Messrs. Nagle and Beckerman are included in Exhibit 5 and designations for Mr. Hanna and Ms. Latimer are included in Exhibit 6.  Designations for witnesses that one side plans to call via designation but the other side currently plans to call live are not included.  Based on recent witness list exchanges, there are a small number of additional designations and associated exhibits for which the parties anticipate providing to the Court on February 20, 2026, and other additional designations may be provided during trial consistent with the procedures outlined in paragraph 29, below.

B.    <u>Objections to Deposition Designations and Exhibits</u>

21.    The parties used the objection key shown in the table below for objections to deposition designations and exhibits.

**EXHIBIT LIST AND DEPOSITION DESIGNATION OBJECTIONS**

| Code | Objection |
|------|-----------|
| 408 | Settlement Communication (Rule 408) |
| A | Authenticity (Rules 901, 902) |
| A/C | Attorney-Client Privilege and/or Work Product Doctrine (Rule 502) |
| B | Best Evidence (Rules 1002-06) |
| D | Duplicative Document Listed Multiple Times |
| F | Lack of Personal Knowledge / Foundation (Rule 602) |
| H | Hearsay (Rules 801, 802, 805) |
| I | Incomplete / Rule of Optional Completeness (Rule 106) |

| LP | Admissible for Limited Purpose Only (Rule 105) |
|---|---|
| MIL | Subject to Motion *in Limine* or *Daubert* Motion |
| N | Not Properly Identified or Disclosed (e.g., Incorrect or Missing Bates Range) |
| P | Unfair Prejudice, Misleading, Confusion of Issues, and/or Cumulative (Rule 403) |
| Q | Poor Quality, Illegible, or Unclear Image |
| R | Relevance (Rules 401, 402) |

**ADDITIONAL DEPOSITION DESIGNATION OBJECTIONS**

| Code | Objection |
|---|---|
| 701/702 | Improper Opinion / Lay Opinion (Rule 701/702) |
| AA | Asked and Answered |
| AF | Assumes Facts Not in Evidence |
| ARG | Argumentative |
| C | Compound |
| CQ | Colloquy |
| IH | Improper or Incomplete Hypothetical |
| IMP | Improper Designation |
| IN | Incomprehensible |
| L | Leading |
| LC | Legal Conclusion |
| MIS | Mischaracterizes/misstates testimony |
| NAQ | No Answer Designated or No Question Designated |
| NAR | Calls for Narrative |
| NR | Non-responsive |
| SCOPE | Outside scope of 30(b)(6) topic or affirmative designation |
| SPEC | Calls for Speculation |
| V | Vague |

C.    <u>Agreements Concerning Designations</u>

22.    For purposes of the parties' respective cases-in-chief, the parties have exchanged deposition designations, objections and counter-designations, except for fact witnesses who appeared on any of either party's witness lists as testifying live, for which the parties have agreed on a separate schedule set forth below to provide designations, objections and counter-designations in the event that those individuals are subsequently reclassified as testifying by deposition or who has been removed or withdrawn. Deposition testimony to be used solely for impeachment purposes need not be included in these designations.

23.    Each side reserves the right to (a) use designations identified by the other side either as counter-designations or as affirmative designations, (b) use any of its counter-designations as if identified as the party's affirmative designation for a witness identified on its witness list as testifying by designation, and (c) use the designated testimony in whole or in part.

24.    Subject to the deadlines set forth in paragraph 29, each party reserves the right to supplement, amend, or withdraw its list of designations in response to any additional disclosures by the other side and/or as may be needed to rebut any facts or evidence presented by the other side at trial or in response to any rulings by the Court. To the extent either side withdraws a portion (but not all) of its affirmative deposition designations, the opposing side may use any of its previously submitted counter-designations for that witness subject to the other side's objections under the rule of completeness (so that a deposition answer is not cut off).

25.    These designations should not be construed as acknowledgement of the scope of the trial or admissibility of evidence. Designation of any portion of a transcript does not waive each side's right to contest the admissibility of the witnesses' testimony nor does it constitute a

waiver of any admissibility arguments that each party may raise.  Designation of any testimony does not imply admissibility.

26.    All depositions shall be presented through video presentation, unless no party has a video of the deposition.  When playing video, no adjustments to the original recording, including the speed of the recording, shall be made, other than to remove objections stated during the deposition or to remove pauses or other video time that does not constitute testimony.  When playing videotaped deposition testimony, the parties will use a reasonable method to calculate the time attributable to affirmative designations and counter-designations, respectively (including by specific running time, where practicable).  [[**Plaintiffs' position:**  Where the same lines of testimony are designated by multiple parties, the parties will work in good faith to split and equally allocate the time used to each party.  **Defendants' position:**  Where the same lines of testimony are designated by multiple parties, it will be considered an affirmative designation by the party calling the witness for purposes of allocating time.]]  The time for the affirmative designations will be deducted from the total time allowed to the party offering affirmative designations, and the time for the counter-designations will be deducted from the total time allowed to the party offering the counter-designations.

27.    When designations are offered, all admissible counter-designation excerpts will be introduced simultaneously with the corresponding affirmative designations in the sequence in which the testimony was originally given.

28.    Should a fact witness identified as testifying live at trial become unavailable, as that term is defined in the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the parties may, upon reasonable notice, designate specific pages and lines of transcript that they

intend to read or play in lieu of the witness's appearance.  In that instance, the parties will make best efforts to comply with the agreed schedule described in paragraph 29, below.

29.     The parties shall disclose a list of any witnesses they intend to call by designation, including the particular designated testimony by page and line number, including any exhibits that will be admitted through the testimony by 12:00 p.m. ET two calendar days before when it is anticipated such testimony and exhibits will be offered.  The other side shall serve any counter-designations and any objections to the admissibility of the designated testimony or exhibits by 6:30 p.m. ET the same day.  The other side shall serve any objections to the admissibility of the counter-designated testimony or exhibits and counter-counter designations by 8:30 p.m. ET the same night.  The parties shall meet and confer by 9:30 p.m. ET on the same night objections are served to resolved any objections.  Any objections that cannot be resolved shall be submitted to the Court no later than 7:00 a.m. ET the day before anticipated use, unless another deadline is ordered by the Court.  The parties shall complete the foregoing process for a sufficient number of witnesses to avoid gaps in a trial day in the event that the schedule of a live witness requires accommodation.  The party calling the witness by designation shall be responsible for preparing the video of the designated testimony and playing the designated and counter designated testimony in court, and shall provide to the other side at no later than 9:30 p.m. ET the night before the testimony is to be played a final cut of the deposition video, and a clip report, for auditing.

30.     The parties shall provide the Court and the Court reporter with a highlighted copy of the deposition transcript in advance of the trial session during which the designated testimony is to be played.  The party calling the witness by designation shall be responsible for (i) providing the other side a final version of the deposition transcript to be submitted to the Court, no later than

14

9:30 p.m. ET the night before, and (ii) submitting a copy of the deposition transcript to the Court

by 7:00 a.m. ET on the day of the testimony's anticipated use.

**XII.    A list by each party of all exhibits to be offered in its case-in-chief**

    A.    <u>Lists of Trial Exhibits</u>

31.    Attached hereto as Exhibit 7 is Plaintiffs' exhibit list and attached hereto as

Exhibit 8 is Defendants' exhibit list.  The parties' exhibit lists include a description of all exhibits

that may be introduced at the trial,[1] including any objection(s) to the exhibit, the nature of the

objection(s), and the party (or parties) making the objection(s).  Exhibits with a single asterisk (*)

are those to which no party objects on any ground.  If any party believes that the Court should rule

on such an objection in advance of trial, that party has included a notation to that effect (e.g.,

"Advance Ruling Requested").

    B.    <u>Objections to Deposition Designations and Exhibits</u>

32.    [[**Plaintiffs' position**:  Consistent with the Court's individual practices,

Plaintiffs' exhibit list notates objections for which they seek a pretrial ruling with "Advance

Ruling Requested."  Defendants object to all of Plaintiffs' exhibits (including over 50

documents also appearing on their own exhibit list), averaging 4.5 objections per exhibit and

lodging over 5,000 in total.  While Plaintiffs have endeavored to meet and confer to narrow these

objections pretrial and have proposed groupings to reduce exhibit-by-exhibit analysis,

Defendants assert any meaningful narrowing can only occur on a nightly basis during trial.

While some witness-specific objections should be negotiated during trial, *see infra* ¶ 45,

Defendants' proposed course places unnecessary burden on both the parties and the Court in the

---

[1] Due to confidentiality concerns and to avoid the need for sealing, the parties have omitted the document description column from the exhibit lists that will be filed publicly on the docket, but have included them in the versions that will be emailed to the Court.

midst of trial. This burden would redound unfairly on Plaintiffs, who would not even learn which objections Defendants intended to maintain until 8:30 PM the night before an examination, and who will be calling many of Defendants' executives in their case in chief. While many of Defendants' objections may be conducive to pretrial resolution, Plaintiffs have limited their requests for advanced ruling to two categories of objections that may be able to be "grouped" or where clear guidance from the Court on some exhibits could lead to a broader resolution on other exhibits:

- **Rule 403:** Defendants claim F.R.E. 403 bars over 700 of Plaintiffs' exhibits, but have resisted Plaintiffs' efforts to understand the basis of those objections or to group categories of exhibits for discussion. (for example, not responding to Plaintiffs' inquiry as to whether resolution of motions in limine would eliminate any F.R.E. 403 objections). If Defendants intend to maintain a claim that over half of Plaintiffs' exhibits are unfairly prejudicial, misleading, or confusing, pretrial resolution of those claims would clarify for all parties what is in and out of bounds, facilitating trial planning and limiting inter-trial disputes. To the extent Defendants – as they now suggest – intend some 403 objections to only to preserve claims that a particular exhibit will ultimately prove cumulative, they should be required to disclose which ones so that Plaintiffs may plan accordingly.

- **F.R.E. 401:** Defendants also claim over 400 of Plaintiffs' exhibits are irrelevant under F.R.E. 401, also declining to meaningfully engage with Plaintiffs' efforts to understand or group those objections. As with their Rule 403 objections, if Defendants intend to maintain a claim that over a third of Plaintiffs' exhibits lack relevance, identifying and resolving the basis for their claims would promote efficiency.

33.    Efficiency and basic fairness also favor pretrial rulings on some of Plaintiffs' objections to Defendants' exhibits, particularly in light of Plaintiffs' much more restrained approach to lodging objections.[2]  For example, Defendants' exhibit list contains dozens of charts and graphics consisting of expert calculation or analysis not contained in any report, which were produced for the first time on February 9, 2026, and which Defendants claim constitute F.R.E. 1006 summaries.  *See* DX-3337 — DX-3387.  Defendants' proposal would lead to a manifestly unfair result:  Plaintiffs would only learn if the Court would permit this undisclosed expert opinion when Defendants seek to introduce these exhibits through their own experts - after conclusion of Plaintiffs' case in chief, and after Plaintiffs' examination of their own experts.  Indeed, Defendants list almost 300 exhibits Defendants purportedly intend to offer as F.R.E. 1006 summaries:  others include over 250 tables, figures, and attachments from their expert reports.  *See* DX-2043 — DX-3302.  Defendants' exhibit list also includes several exhibits of uncertain origin which were used as demonstratives at depositions.  *See, e.g.,* DX-1434.  While Defendants now claim the sheer volume of their proposed 1006 exhibits warrants delaying adjudication, that volume is the direct result of Defendants' choice to include voluminous inadmissible materials on their list, and they should not benefit from that choice.

34.    **Defendants' position:**  Plaintiffs have misrepresented the record as it relates to Defendants' position on exhibit objections and the parties' meet and confers in connection therewith.  Plaintiffs claim that they "have proposed groupings to reduce exhibit-by-exhibit analysis," that Defendants "have resisted Plaintiffs' efforts to understand the basis of [Defendants' F.R.E. 403] objections or to group categories of exhibits for discussion," and that Defendants have

---

[2] For over 400 of Defendants' exhibits, Plaintiffs make no objection so long as they are introduced or used with an appropriate witness.

"declin[ed] to meaningfully engage with Plaintiffs' efforts to understand or group those objections." None of that is true. Defendants have never refused to engage with Plaintiffs to resolve any objections. Instead, Defendants have proposed an efficient process to resolve *all* objections—i.e., F.R.E. 401 and 403, as well as those relating to hearsay, foundation, etc., multiple of which can apply to a single document—as contained in paragraphs 29 and 43-44 herein (a process to which Plaintiffs have already agreed). After making such a proposal, Plaintiffs never came back to Defendants to reject or otherwise state they disagree with using the process in paragraphs 29 and 43-44. Instead, without further conferring, they included the above positions in the draft Joint Pretrial Order which misstate the record. Furthermore, Defendants stated during the parties' meet and confers that in order to resolve the F.R.E. 401 and 403 objections (as well as many of the other objections such as hearsay and foundation), Plaintiffs would need to provide additional information regarding the use of certain documents in order for Defendants to determine whether or not they should continue to preserve those objections, and such determinations need to be made on a document-by-document basis. Plaintiffs have provided none of that information, nor have they "proposed" any "groupings" within the F.R.E. 401 and 403 categories as they suggest. Defendants remain concerned by Plaintiffs' proposal, as Plaintiffs have not put forward any proposal to Defendants, or to the Court, regarding how Defendants' F.R.E. 401 and 403 objections may be resolved at a "group" level without Defendants knowing how Plaintiffs will use any of these exhibits, and without looking at a specific document to assess the basis for the specific relevance objection thereon.

35. On the merits, Plaintiffs' request to have the Court adjudicate hundreds of objections to exhibits pre-trial is premature, inefficient and unnecessary. *First*, Plaintiffs' proposal will not resolve the admissibility of many of the exhibits at issue and will likely require the Court

to rule on many of these exhibits twice. For example, if an exhibit has F.R.E. 403 (unfairly prejudicial), F.R.E. 602 (foundation) and F.R.E. 802 (hearsay) objections, and the Court rules on the F.R.E. 403 objection pre-trial, the F.R.E. 602 and 802 objections still cannot be resolved until it is clear what witness the exhibit will be used with and the purpose for which it will be used. *Moreover*, since F.R.E. 403 contemplates exclusion for evidence that may be misleading or cumulative, among other reasons, decisions on admissibility require an understanding of what the documents will be used for and what other evidence is being admitted on a document-by-document basis, and the parties have not engaged in such a process and cannot meaningfully engage in such a process before trial. Similarly, ruling on F.R.E. 401 (relevance) objections requires an understanding of Plaintiffs' case—a determination best made during trial itself. Indeed, the Court's Individual Practices in Civil Cases 10.A.xii contemplates that "[i]n general, the Court will rule on relevance . . . objections at the time of trial[.]" *Finally*, Plaintiffs' proposal to resolve exhibit objections now is inefficient considering there are over 1,200 exhibits on Plaintiffs' exhibit list and over 1,800 exhibits on Defendants' exhibit list, most of which will never be introduced at trial. Defendants are entitled to preserve objections that may be necessary depending on the context in which Plaintiffs intend to use the exhibits. As set forth in paragraphs 29 and 43-44, the parties already have agreed upon a procedure that provides for (a) the advance exchange of exhibits a party intends to use with a witness on direct or cross-examination, (b) a meet and confer process to narrow and resolve objections to such exhibits, and (c) a procedure by which any remaining disputes would be presented to the Court for resolution the morning before such exhibits are expected to be introduced. That procedure will allow the parties the opportunity to reconsider and potentially narrow objections once they see the context in which the exhibits are being used. That procedure will also ensure that the Court has the necessary context to rule on exhibit objections

and will more efficiently focus the Court's attention on only the exhibits that will actually be used and those exhibit objections that are truly necessary to be resolved for trial.

36.    Plaintiffs' request to have the Court rule on hundreds of F.R.E. 1006 exhibits in advance of trial is premature and inefficient for the same reasons. *First*, given that Defendants do not yet know what evidence Plaintiffs will elicit at trial, Defendants may not seek to use all of the F.R.E. 1006 exhibits currently on the parties' exhibits list. *Second*, resolving Plaintiffs' objections will require the Court to understand what witness is sponsoring the exhibit and the context in which the document is being used, a determination best made during trial itself. *Finally*, as explained, the parties have already agreed to a procedure that would allow the Court to address any exhibit disputes the morning before any such exhibits are expected to be used. Defendants have not requested advance ruling for any exhibits on the parties' exhibit lists for these reasons (with the exception of exhibits specifically referenced in Defendants' motions *in limine*). If, however, the Court agrees to provide advance ruling for Plaintiffs' exhibits on a document-by-document basis, Defendants would like to respectfully request an opportunity to do the same as to *any* categories of Plaintiffs' objections (not limited to F.R.E. 401 and 403 objections).]]

37.    The parties used the objection key shown in the table below for objections to exhibits.

### EXHIBIT LIST AND DEPOSITION DESIGNATION OBJECTIONS

| Code | Objection |
|------|-----------|
| 408 | Settlement Communication (Rule 408) |
| A | Authenticity (Rules 901, 902) |
| A/C | Attorney-Client Privilege and/or Work Product Doctrine (Rule 502) |
| B | Best Evidence (Rules 1002-06) |
| D | Duplicative Document Listed Multiple Times |
| F | Lack of Personal Knowledge / Foundation (Rule 602) |

| Code | Objection |
|------|-----------|
| H | Hearsay (Rules 801, 802, 805) |
| I | Incomplete / Rule of Optional Completeness (Rule 106) |
| LP | Admissible for Limited Purpose Only (Rule 105) |
| MIL | Subject to Motion *in Limine* or *Daubert* Motion |
| N | Not Properly Identified or Disclosed (e.g., Incorrect or Missing Bates Range) |
| P | Unfair Prejudice, Misleading, Confusion of Issues, and/or Cumulative (Rule 403) |
| Q | Poor Quality, Illegible, or Unclear Image |
| R | Relevance (Rules 401, 402) |

C.    Agreements Concerning Trial Exhibits

38.    Consistent with the Court's February 9, 2026 order, the parties will submit by email or by hard-drive to the Court electronic copies of each exhibit sought to be admitted and a Microsoft Word document listing all exhibits sought to be admitted by February 18, 2026.

39.    Subject to the Court approval, following the submission of the parties' exhibit lists but before March 2, 2026, Plaintiffs (collectively) may add up to 30 additional exhibits to Exhibit 7 and Defendants (collectively) may add up to 30 additional exhibits to Exhibit 8.  No more than 10 of such exhibits can be FRE 1006 exhibits.  In addition, any documents associated with a fact witness who was deposed after the exchange of preliminary witness lists on January 6, 2026, may also be added to the parties' exhibit lists, prior to March 2, 2026, and do not count towards that side's 30 exhibit limit.  The parties reserve the right to object to such additional exhibits on any grounds, other than objecting to the timing of when such exhibits were added to the list; objections to those exhibits are due within 7 days of the party providing the bates numbers, or a description of the additional exhibits, as applicable.

40.    Any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

41.    Inclusion of an exhibit on the exhibit list is not an agreement that any party will offer an exhibit or that it is admissible if used by any other party.

42.    Exhibits to be used solely for impeachment purposes need not be included in the parties' lists of trial exhibits.

43.    The parties have prepared objections to the opposing parties' proposed trial exhibits without the benefit of knowing exactly how the other parties intend to use their listed exhibits at trial.  Any party's objection to any exhibit that has been offered by that party and any other party in no way prejudices the objecting party's ability to seek to introduce the exhibit for a proper purpose at trial.

44.    The parties' exhibits lists need not include demonstratives.    The term "demonstratives" shall refer to a visual or demonstrative aid that consists of a unique depiction of the evidence in any form; call-outs of exhibits or references to testimony for which there is no pending objection shall not be considered a demonstrative for purposes of the disclosure deadlines.

    a.    The parties will exchange any demonstratives (as defined herein), slides, graphics, documents, or visual aids of any type (other than those addressed in paragraph 48) that counsel intends to use in its opening statements by 12:00 p.m. ET the day before the beginning of opening statements.  The opposing party will provide its objections and responses by 6:00 p.m. ET the day before the beginning of opening statements.  The parties will

promptly meet and confer to attempt to resolve any objections to these opening demonstratives or exhibits.

b.    The parties will exchange any demonstratives (as defined herein), slides, graphics, documents, or visual aids of any type (other than those addressed in paragraph 48) that counsel intends to use in its closing arguments by 4:00 p.m. ET the day before the beginning of closing arguments.  The opposing party will provide its objections and responses by 8:00 p.m. ET the day before the beginning of closing arguments.  The parties will promptly meet and confer to attempt to resolve any objections to these closing demonstratives.

c.    Complete slide decks used during opening statements and closing arguments shall be exchanged in hard-copy and in native electronic format to opposing counsel at the commencement of the offering party's presentation.  Each side will provide at least five hard copies of any slide deck for the other side.

d.    If good faith efforts to resolve objections to any exhibit or demonstrative fail, the parties will submit a list of unresolved objections to the Court by 7:00 a.m. ET on the day of their expected use or by any other deadline ordered by the Court.  The parties shall attach to the email digital copies of all relevant exhibits.

45.    The parties shall exchange complete representations of any exhibits and demonstratives (in color if in color, and with animations, if applicable, in native electronic format) that they intend to use during the direct examination of any in-person witness or the cross

examination of any in-person non-expert witness, by witness and exhibit number (or demonstrative exhibit number), by 6:30 p.m. ET the day before such examination of that witness will take place. For the avoidance of doubt, this exchange shall apply regardless of who is calling the witness in their case-in-chief.  The parties shall exchange any previously-asserted objections thereto that they intend to stand on by 8:30 p.m. ET the same night.  The parties shall meet and confer by 9:30 p.m. ET on the same night to resolve any objections to those exhibits and demonstratives.  For example, for an exhibit or demonstrative to be used on March 5, 2026, it will be disclosed (with witness and demonstrative exhibit number) by 6:30 p.m. ET on March 4, 2026.  Objections, if any, will be served by 8:30 p.m. ET on March 4, 2026.  The parties shall meet and confer by 9:30 p.m. ET on March 4, 2026 to resolve any objections.  The same timing and terms for the parties' exchange of exhibits and demonstratives apply before the examination of any rebuttal witness.  For the avoidance of doubt, this does not include demonstratives created during witness testimony.  This paragraph shall not apply to exhibits introduced through deposition designations, as exhibits intended to be introduced through a witness called by designation shall be subject to the rules and timelines in accordance with paragraph 29 above.

46.    For exhibits introduced by deposition designation, the parties shall use the version of the exhibit introduced at the deposition, which shall be stamped to include both the deposition exhibit number and the trial exhibit number.  The parties will propose an instruction for the Court to read to the jury as to the exhibit numbering for these documents.  Before the video of the designated testimony is played in court, the party calling the witness shall move into evidence all exhibits not objected to and as agreed upon by the parties.

47.    If good faith efforts to resolve objections to any exhibit or demonstrative for use with an in-person witness examination fail, the parties will submit a list of unresolved objections

to the Court by 7:00 a.m. ET on the day of their expected use or by any other deadline that the Court orders.  The parties shall attach to the email digital copies of all relevant exhibits.

48.     The parties are not required to disclose in advance demonstratives created during testimony or argument at trial (such as writing on a white board in the course of a direct examination), or to the ballooning, highlighting, or excerpting of documents marked as exhibits that were otherwise properly disclosed.

      D.     <u>Exhibit Submissions & Binders</u>

49.     Before direct examination begins, the party conducting the direct examination shall prepare binder(s) containing the exhibits anticipated for use during direct examination and will provide two copies of binder(s) to the other side, two copies to the Court and one copy to the Court reporter.  Before cross examination begins, the party cross examining a witness shall prepare binder(s) containing the exhibits anticipated for use during cross examination and will provide two copies of the binder(s) to the other side and the required number of copies to the Court and Court reporter.  The binders are intended as a convenience only; the party conducting an adverse direct examination or adverse cross examination may use additional exhibits during the examination (and redirect) if the witness's testimony warrants.  If a witness on cross examination is held over at the end of a trial day, both copies of the binder(s) provided to the other side containing cross examination exhibits shall be returned to counsel conducting the cross examination until testimony resumes.  The parties agree that witnesses who are held over on cross examination at the end of a trial day may not communicate with anyone, including representatives of the parties or their attorneys, about the substance of the case or their testimony.

E.    Party Lists for Disclosure of Information, Demonstratives, and Exhibits

50.    Disclosure of the information, demonstratives and exhibits discussed in any section above shall be directed to the following via electronic mail:

| Counsel for Plaintiffs: | Counsel for Defendants: |
| --- | --- |
| ATR-USLNE-Trial-DOJ@usdoj.gov | usvlivenationlitigationfull.lwteam@lw.com |
| LiveNationTrialStates@ag.ny.gov | LN_Lit_CSM@cravath.com |

**XIII.    A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages.**

A.    **Plaintiffs' Statement**

Twenty-four of the Plaintiff States—Arizona, Arkansas, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Utah, Washington, West Virginia, Wisconsin, and the District of Columbia (the "Plaintiff Damages States")—seek damages on behalf of individual consumers who purchased primary concert tickets for events at major concert venues in those States. These damages are the result of Defendants' monopolization of the market for primary concert ticketing services to fans at major concert venues, in violation of Section 2 of the Sherman Act and those States' laws, and Defendants' unlawful exclusive dealing in the same market, in violation of Section 1 of the Sherman Act and those States' laws. The State of California seeks other monetary relief based on its claim that Defendants have violated its Unfair Competition Law by (1) violating the Sherman Act, meaning Defendants have engaged in unlawful business acts or practices, and (2) engaging in unfair business acts or practices.

The Plaintiff Damages States and California intend to prove the extent of those damages and monetary relief through evidence at trial, including through expert testimony. These

damages and monetary relief will consist of the overcharges paid by certain consumers when purchasing primary concert tickets from Defendant Ticketmaster L.L.C., and are calculated through the use of linear regressions based on underlying data in this case, including ticketing and venue data produced by Defendants and third parties, and involve a benchmark analysis comparing ticketing fees retained by Ticketmaster to estimated fees that would be charged in a competitive market. The Plaintiff Damages States and California currently estimate that total damages and other monetary relief for the years 2017 to 2024 are approximately $281 million.

Thirty-four of the Plaintiff States—Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and the District of Columbia—also seek civil penalties in the amount and manner available under their respective state laws.[3]

Plaintiffs also intend to seek equitable relief, including structural and behavioural remedies to stop Defendants' unlawful conduct, deny Defendants the fruits of their past conduct, prevent further anticompetitive conduct by Defendants, and restore competition.

## B.    Defendants' Statement

Defendants contend that no State Plaintiff is entitled to any damages.  Defendants further assert that State Plaintiffs' expert testimony on damages is inadmissible for the reasons stated in our pending Motion To Exclude the Reports, Opinions, and Testimony of Monetary Relief States'

---

[3] The Plaintiff States and Defendants have stipulated that on the jury's finding of violations of state law, questions of fact that bear solely on for the appropriate amount of civil penalties—for example, the number or duration of violations, or statutory factors such as scienter, concealment and effective deterrence—may be resolved by the Court in a separate hearing following a jury verdict.

Damages Expert, Dr. Rosa M. Abrantes-Metz.  Defendants further contend that even if State
Plaintiffs' expert testimony on damages were admissible, it is not capable of meeting any States's
burden to prove damages as a matter of law.  Defendants further assert that no State Plaintiff is
entitled to any damages outside the applicable limitations period for its claim, or any damages
caused by any alleged anticompetitive conduct that occurred outside the application limitations
period.

**XIV.    A statement of whether the parties consent to less than a unanimous verdict**

The parties do not consent to less than a unanimous verdict.

**XV.    Confidentiality Procedures**

51.    The parties request guidance from the Court on the confidentiality procedures and
standards for trial.  Such guidance would be beneficial and allow the parties and non-parties to
prepare exhibits and designated deposition testimony efficiently and consistent with the Court's
expectations. The parties propose that the Court hear from non-parties whose information is
included in the parties' exhibit lists or deposition designations at the February 23, 2026, pretrial
conference, if they wish to be heard on the confidentiality categories listed below.

52.    Subject to the Court's approval, the parties have agreed that the following
categories of material should presumptively be permitted to be redacted/sealed at trial without the
need for the party or non-party to separately move to seal on a document-by-document or
testimony-by-testimony basis:

a.    Personally Identifiable Information, such as social security numbers,
driver's license or passport numbers, birthdates, phone numbers,
individual addresses or zip codes, and/or personal email addresses
(redacted in such a manner so as to not obscure the identity of the sender

28

or receiver), or information otherwise identified in the Court's Individual Practices in Civil Cases at 11(A);

b. Sensitive personal or medical information, if irrelevant to the issues in this case;

c. Specific prices, fees, or percentages in contracts currently in effect or contracts, offers, and proposals dated within the last four years (e.g., contracts dated on or after January 1, 2022), which the parties agree to apply redactions to only specific figures, including redacting only the specific figures in internal communication that reflect negotiating positions regarding such terms;

d. Specific competitively-sensitive contract terms in contracts currently in effect or contracts executed within the last four years (e.g., on or after January 1, 2022), excluding provisions regarding: renewals, profit sharing, incentive rebates, rent, fee splits, tour radii, fan data, artist fan clubs, revenue sharing, or any other provision relevant to the case, including redacting only the specific contract terms referenced in internal communications about negotiating positions regarding such terms;

e. Identifying information regarding future acquisitions discussed within the last 3 years (redacting only identifying information and not the discussion surrounding it);

f. Current or future non-public figures regarding prices, costs or margins

29

53.     The parties and non-parties may seek approval from the Court to redact material falling outside of the above categories, consistent with the presumption of public access and the nature of the categories approved by the Court.

A.     **Party Confidentiality Procedures**

54.     [[**Plaintiffs' position:**  To facilitate a more efficient confidentiality process during trial, Defendants will provide confidentiality designations for 200 trial exhibits that Plaintiffs anticipate are likely to be introduced at trial, selected by Plaintiffs, within 7 days of the Court providing guidance on the categories proposed above.  Plaintiffs will select the exhibits from the custodial files of five individuals on the parties' witness lists and will provide Defendants with a list of such exhibits no later than the day on which the Court issues guidance on confidentiality.

**Defendants' position:**  Requiring Defendants to provide confidentiality designations on 200 potential exhibits within seven days at the beginning of trial is overly burdensome and inefficient. The parties already have agreed on a procedure that provides deadlines for Defendants to provide confidentiality designations on the exhibits Plaintiffs indicate they actually intend to use with a witness at trial and to resolve any confidentiality disputes with the Court the morning before the exhibits are sought to be used. *See infra* ¶¶ 54-56.  In the interest of compromise, Defendants will agree to provide confidentiality designations on up to 50 potential exhibits that are likely to be used with the first five witnesses expected to be called within 7 days of the Court providing guidance on the categories proposed above.]]

55.     For party witnesses that will be called by designation:

a.     The party shall identify to the other side any designated testimony or exhibit that will be admitted through the designated testimony that requires

sealing from public view during trial at the same time the designations are served to the other side as required by paragraph 29 above.[4]

b.    By 9:30 p.m. ET on the day confidentiality designations are provided, the parties shall meet and confer to resolve any confidentiality-related disputes.

c.    If good faith efforts to resolve confidentiality-related disputes fail, the parties will submit a list of unresolved disputes to the Court by 7:00 a.m. ET on the day before the testimony's expected use or by any other deadline ordered by the Court.  The party asserting confidentiality shall create and attach to the email digital copies of all relevant exhibits and testimony and provide the basis for the assertion of confidentiality.

56.    For party witnesses that will be called live: The parties will exchange exhibits and demonstratives as required by paragraph 44 herein.

a.    For exhibits that a party plans to use with a fact witness, regardless of whether on direct or cross examination, or with an expert witness on direct examination, the party shall identify to the other side any exhibit that requires sealing from public view during trial by 6:30 p.m. ET, one calendar day before use.

b.    By 8:30 p.m. ET on the same night, each party will identify any confidentiality-related concerns in the exhibits provided by the other side.

---

[4] As used in the parties' proposed confidentiality procedures, "identify" means to provide a redboxed copy of the relevant exhibit or testimony to the other side using Adobe Acrobat's "mark for redaction" tool.

c.    By 9:30 p.m. ET on the same night, the parties shall meet and confer to resolve any confidentiality-related disputes.

d.    If good faith efforts to resolve confidentiality-related disputes fail, the parties and relevant non-party will submit a list of unresolved disputes to the Court by 7:00 a.m. ET on the day of the exhibit or testimony's expected use or by any other deadline ordered by the Court.  The party requesting confidentiality shall create and attach to the email digital copies of all relevant exhibits and testimony and provide the basis for the assertion of confidentiality.

57.    For opening statements and closing arguments:

a.    The parties will exchange exhibits and demonstratives as required by paragraph 44 herein.

b.    The party shall identify to the other side anything in the other side's materials that it believes requires sealing from public view during the trial by 6:00 p.m. ET the day before the beginning of opening statements, or by 8:00 p.m. ET the day before the beginning of closing arguments.

c.    The parties will promptly meet and confer to attempt to resolve any confidentiality disputes related to opening and closing materials.

d.    If good faith efforts to resolve confidentiality disputes related to opening and closing materials fail, the parties will submit a list of unresolved objections to the Court by 7:00 a.m. ET on the day of their expected use or by any other deadline ordered by the Court.   The party asserting

32

confidentiality shall create and attach to the email digital copies of all relevant materials and provide the basis for the assertion of confidentiality.

**B.      Non-Party Confidentiality Procedures**

58.      On February 9, 2026, the parties made best efforts to notify all non-parties of (i) all documents produced by that non-party that were included on their respective exhibit lists as of February 6, 2026, and (ii) deposition excerpts from employees or former employees of that non-party that had been designated for trial testimony as of February 6, 2026.

59.      The parties' February 9 letters requested that, by February 17, 2026, each non-party that seeks to seal or redact at trial exhibits or testimony return to the parties redboxed copies of the exhibits and deposition transcripts, indicating which material it seeks to seal.

60.      The parties request that the Court, after hearing any non-parties that wish to be heard at the pretrial conference, provide guidance as to what categories of information may be redacted for non-party documents and testimony, understanding that non-parties may still seek to seal particular information beyond the categories listed above in paragraph 52.

61.      The party using any non-party exhibits that are designated as confidential or highly confidential shall identify such documents via email to the non-party and opposing counsel by no later than 6:30 p.m. ET the day before such exhibits or testimony will be introduced at trial.  If the non-party seeks to maintain confidentiality protection for any such exhibits or testimony, it must inform the parties by no later than 8:30 p.m. ET the same night.

     a.      The parties and the relevant non-party shall meet and confer no later than 9:30 p.m. ET the day before any non-party exhibit or testimony will be introduced at trial to resolve any confidentiality-related disputes.

b.     If good faith efforts to resolve confidentiality-related disputes fail, the parties and relevant non-party will submit a list of unresolved disputes to the Court by 7:00 a.m. ET on the day of the exhibit or testimony's expected use or by any other deadline ordered by the Court. The relevant non-party asserting confidentiality shall create and attach to the email digital copies of all relevant exhibits and testimony, with redboxes using Adobe's "mark for redaction" tool indicating the material it seeks to seal, and provide the basis for the assertion of confidentiality.

62.     The party using any deposition designation from employees or former employees of a non-party that are designated as confidential or highly confidential shall identify such deposition designations via email to the non-party and opposing counsel by no later than 6:30 p.m. ET three calendar days before such testimony will be offered.

a.     If the non-party seeks to maintain confidentiality protection for any such testimony, it must inform the parties by no later than 5:00 p.m. two calendar days before designated testimony is offered.

b.     The parties and the relevant non-party shall meet and confer no later than 9:30 p.m. ET the day any confidentiality designations are provided to resolve any confidentiality-related disputes.

c.     If good faith efforts to resolve confidentiality-related disputes fail, the parties and relevant non-party will submit a list of unresolved disputes to the Court by 7:00 a.m. ET on the day before anticipated use of the testimony or by any other deadline ordered by the Court. The relevant non-party asserting confidentiality shall create and attach to the email digital

34

copies of all relevant exhibits and testimony, with redboxes using Adobe's "mark for redaction" tool indicating the material it seeks to seal, and provide the basis for the assertion of confidentiality.

63.    If a party intends to use non-party material that has been previously designated as confidential or highly confidential in its opening statement or closing argument materials, the following procedure will apply:

a.    The parties will describe the contents of the opening and closing materials that implicate the relevant non-party by (i) 1:00 p.m. ET the day before the beginning of opening statements, or (ii) by 7:00 p.m. ET the day before the beginning of closing arguments.

b.    The non-party shall identify anything that it believes requires sealing from public view during the trial by 6:00 p.m. ET the day before the beginning of opening statements, or by 8:00 p.m. ET the day before the beginning of closing arguments.

c.    The parties and relevant non-party will promptly meet and confer to attempt to resolve any confidentiality disputes related to opening and closing materials.

d.    If good faith efforts to resolve confidentiality disputes related to opening and closing materials fail, the parties and relevant non-party will submit a list of unresolved disputes to the Court by 7:00 a.m. ET on the day of their expected use or by any other deadline ordered by the Court. The parties and the relevant non-party shall attach to the email digital copies of all relevant materials and provide the basis for the assertion of confidentiality.

64.     The parties will continue to include each other on all email correspondence with non-parties related to confidentiality issues.

Dated:  February 13, 2026

Respectfully submitted,

LATHAM & WATKINS LLP                      CRAVATH, SWAINE & MOORE LLP

_____           _____
Alfred C. Pfeiffer (admitted *pro hac vice*)     Lauren A. Moskowitz
    *Co-Lead Trial Counsel*                     Jesse M. Weiss
David R. Marriott                               Nicole M. Peles
    *Co-Lead Trial Counsel*
Andrew M. Gass (admitted *pro hac vice*)         Two Manhattan West
Timothy L. O'Mara (admitted *pro hac vice*)      375 Ninth Avenue
Jennifer L. Giordano                            New York, NY 10001
Kelly S. Fayne (admitted *pro hac vice*)         (212) 474-1000
Lindsey S. Champlin (admitted *pro hac vice*)
Robin L. Gushman (admitted *pro hac vice*)       lmoskowitz@cravath.com
                                                jweiss@cravath.com
505 Montgomery Street, Suite 2000                npeles@cravath.com
San Francisco, CA 94111
(415) 391-0600
                                                *Attorneys for Defendants Live Nation*
1271 Avenue of the Americas                      *Entertainment, Inc. and Ticketmaster*
New York, NY 10020                               *L.L.C.*
(212) 906-1200

555 11ᵗʰ Street, NW, Suite 1000
Washington, D.C. 20004
(202) 637-2200

Al.Pfeiffer@lw.com
David.Marriott@lw.com
Andrew.Gass@lw.com
Tim.O'Mara@lw.com
Jennifer.Giordano@lw.com
Kelly.Fayne@lw.com
Lindsey.Champlin@lw.com
Robin.Gushman@lw.com

*Attorneys for Defendants Live Nation*
*Entertainment, Inc. and Ticketmaster L.L.C.*

 /s/ John R. Thornburgh II
JOHN R. THORNBURGH II

Bonny Sweeney
*Co-Lead Trial Counsel*
David Dahlquist
*Co-Lead Trial Counsel*
United States Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 725-0165
Facsimile: (202) 514-7308
Email: John.Thornburgh@usdoj.gov
Email: Bonny.Sweeney@usdoj.gov
Email: David.Dahlquist@usdoj.gov
*Attorneys for Plaintiff United States of America*

/s/ Robert A. Bernheim
Robert A. Bernheim (admitted *pro hac vice*)
Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Fax: (602) 542-4377
Email: Robert.Bernheim@azag.gov
*Attorney for Plaintiff State of Arizona*

/s/ Brent Nakamura
Brent Nakamura (admitted *pro hac vice)*
Supervising Deputy Attorney General
Office of the Attorney General
California Department of Justice
300 South Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6000
Email: Brent.Nakamura@doj.ca.gov
*Attorney for Plaintiff State of California*

/s/ Amanda J. Wentz
Amanda J. Wentz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
Fax: (501) 682-8118
Email: amanda.wentz@arkansasag.gov
*Attorney for Plaintiff State of Arkansas*

/s/ Conor J. May
Conor J. May (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Unit
Colorado Department of Law
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: Conor.May@coag.gov
*Attorney for Plaintiff State of Colorado*

/s/ Victoria Maria Orton Field
Victoria Maria Orton Field (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of
Connecticut
165 Capitol Avenue
Hartford, CT 06106
Telephone: 860-808-5030
Email: victoria.field@ct.gov
*Attorney for Plaintiff State of Connecticut*

/s/ Adam Gitlin
Adam Gitlin (admitted *pro hac vice*)
Office of the Attorney General for the
District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Email: Adam.Gitlin@dc.gov
*Attorney for Plaintiff District of Columbia*

 /s/ Lizabeth A. Brady
Lizabeth A. Brady
Director, Antitrust Division
Florida Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com
*Attorney for Plaintiff State of Florida*

/s/ Richard S. Schultz
Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Illinois Attorney General
Antitrust Bureau
115 S. LaSalle Street, Floor 23
Chicago, Illinois 60603
Telephone: (872) 272-0996
Email: Richard.Schultz@ilag.gov
*Attorney for Plaintiff State of Illinois*

/s/ Jesse Moore
Jesse Moore (admitted *pro hac vice*)
Deputy Attorney General
Office of the Indiana Attorney General
302 W. Washington St., Fifth Floor
Indianapolis, IN 46204
Telephone: 317-232-4956
Email: Jesse.Moore@atg.in.gov
*Attorney for Plaintiff State of Indiana*

/s/ Noah Goerlitz
Noah Goerlitz (admitted *pro hac vice*)
Assistant Attorney General
Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Telephone: (515) 281-5164
Email: noah.goerlitz@ag.iowa.gov
*Attorney for Plaintiff State of Iowa*

/s/ Christopher Teters
Christopher Teters (admitted *pro hac vice*)
Assistant Attorney General
Public Protection Division
Office of Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 296-3751
Email: chris.teters@ag.ks.gov
*Attorney for Plaintiff State of Kansas*

/s/ Mario Guadamud
Mario Guadamud (admitted *pro hac vice*)
Louisiana Office of Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Fax: (225) 326-6498
Email: GuadamudM@ag.louisiana.gov
*Attorney for Plaintiff State of Louisiana*

/s/ Schonette J. Walker
Schonette J. Walker (admitted *pro hac vice*)
Assistant Attorney General
Chief, Antitrust Division
200 St. Paul Place, 19th floor
Baltimore, Maryland 21202
Telephone: (410) 576-6470
Email: swalker@oag.state.md.us
*Attorney for Plaintiff State of Maryland*

/s/ Katherine W. Krems
Katherine W. Krems (admitted *pro hac vice*)
Assistant Attorney General, Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 963-2189
Email: Katherine.Krems@mass.gov
*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ LeAnn D. Scott
LeAnn D. Scott (admitted *pro hac vice*)
Assistant Attorney General
Corporate Oversight Division
Michigan Department of Attorney General
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Email: ScottL21@michigan.gov
*Attorney for Plaintiff State of Michigan*

/s/ Zach Biesanz
Zach Biesanz
Senior Enforcement Counsel
Antitrust Division
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
Telephone: (651) 757-1257
Email: zach.biesanz@ag.state.mn.us
*Attorney for Plaintiff State of Minnesota*

/s/ Lee Morris
Lee Morris (admitted pro hac vice)
Special Assistant Attorney General
Mississippi Office of Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-9011
Email: Lee.Morris@ago.ms.gov
*Attorney for Plaintiff State of Mississippi*

/s/ Justin C. McCully
Justin C. McCully (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-9305
Email: justin.mccully@nebraska.gov
*Attorney for Plaintiff State of Nebraska*

/s/ Lucas J. Tucker
Lucas J. Tucker (admitted *pro hac vice*)
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
100 N. Carson St.
Carson City, NV 89701
Email: ltucker@ag.nv.gov
*Attorney for Plaintiff State of Nevada*

/s/ Zachary Frish
Zachary A. Frish (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection & Antitrust Bureau
New Hampshire Attorney General's Office
Department of Justice
1 Granite Place South
Concord, NH 03301
Telephone: (603) 271-2150
Email: zachary.a.frish@doj.nh.gov
*Attorney for Plaintiff State of New Hampshire*

/s/ Andrew F. Esoldi
Andrew F. Esoldi
Deputy Attorney General
Division of Law
Antitrust Litigation and Competition
Enforcement
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (609) 696-5465
Email: Andrew.Esoldi@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

/s/ Evan Crocker
Evan Crocker (admitted *pro hac vice*)
Assistant Attorney General, Division
Director
Consumer Affairs Division
New Mexico Department of Justice
201 3rd St NW, Suite 300
Albuquerque, NM 87102
Telephone: (505) 494-8973
Email: ecrocker@nmdoj.gov
*Attorney for Plaintiff State of New Mexico*

/s/ Jonathan H. Hatch
Jonathan H. Hatch
Assistant Attorney General
Office of the New York State Attorney
General
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8598
Email: jonathan.hatch@ag.ny.gov
*Attorney for Plaintiff State of New York*

/s/ Francisco Benzoni
Francisco Benzoni (admitted *pro hac vice*)
Special Deputy Attorney General
Brian Rabinovitz (admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6000
Facsimile: (919) 716-6050
Email: fbenzoni@ncdoj.gov
Email: brabinovitz@ncdoj.gov

*Attorneys for Plaintiff State of North Carolina*

/s/ Sarah Mader
Sarah Mader (admitted *pro hac vice)*
Assistant Attorney General
Antitrust Section
Office of the Ohio Attorney General
30 E. Broad St., 26th Floor
Columbus, OH 43215
Telephone: (614) 466-4328
Email: Sarah.Mader@OhioAGO.gov
*Attorney for Plaintiff State of Ohio*

/s/ Cameron R. Capps
Cameron R. Capps (admitted *pro hac vice*)
Deputy Attorney General
Consumer Protection
Office of the Oklahoma Attorney General
313 N.E. 21st Street
Oklahoma City, Oklahoma  73105
Telephone:  (405) 522-0858
Fax:  (405) 522-0085
Email: Cameron.Capps@oag.ok.gov
*Attorney for Plaintiff State of Oklahoma*

/s/ Gina Ko
Gina Ko (admitted *pro hac vice*)
Assistant Attorney General
Antitrust, False Claims, and Privacy
Section
Oregon Department of Justice
100 SW Market St.,
Portland, Oregon 97201
Telephone: (971) 673-1880
Fax: (503) 378-5017
Email: Gina.Ko@doj.oregon.gov
*Attorney for Plaintiff State of Oregon*

*/s/ Joseph S. Betsko*
Joseph S. Betsko (admitted *pro hac vice*)
Assistant Chief Deputy Attorney General
Antitrust Section
Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120
Telephone: (717) 787-4530
Email: jbetsko@attorneygeneral.gov
*Attorney for Plaintiff Commonwealth of
Pennsylvania*

*/s/ Paul T.J. Meosky*
Paul T.J. Meosky (admitted *pro hac vice*)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Telephone: (401) 274-4400, ext. 2064
Fax: (401) 222-2995
Email: pmeosky@riag.ri.gov
*Attorney for Plaintiff State of Rhode Island*

*/s/ Jared Q. Libet*
Jared Q. Libet (admitted *pro hac vice*)
Assistant Deputy Attorney General
Office of the Attorney General of South
Carolina
P.O. Box 11549
Columbia, South Carolina 29211
Telephone: (803) 734-5251
Email: jlibet@scag.gov
*Attorney for Plaintiff State of South
Carolina*

*/s/ Bret Leigh Nance*
Bret Leigh Nance (admitted *pro hac vice*)
Assistant Attorney General
1302 E. Hwy 14, Suite 1
Pierre SD 57501-8501
Email: bretleigh.nance@state.sd.us
Telephone: (605) 773-3215
Bar # 5613
*Attorney for Plaintiff State of South Dakota*

*/s/ Hamilton Millwee*
Hamilton Millwee (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General and
Reporter
P.O. Box 20207
Nashville, TN 38202
Telephone: (615) 291-5922
Email: Hamilton.Millwee@ag.tn.gov
*Attorney for Plaintiff State of Tennessee*

*/s/ Diamante Smith*
Diamante Smith (admitted *pro hac vice*)
Assistant Attorney General, Antitrust
Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
Telephone: (512) 936-1162
*Attorney for Plaintiff State of Texas*

*/s/ Marie W.L. Martin*
Marie W.L. Martin (admitted *pro hac vice*)
Deputy Division Director,
Antitrust & Data Privacy Division
Utah Office of Attorney General
160 East 300 South, 5th Floor
P.O. Box 140830
Salt Lake City, UT 84114-0830
Telephone: 801-366-0375
Email: mwmartin@agutah.gov
*Attorney for Plaintiff State of Utah*

*/s/ Sarah L. J. Aceves*
Sarah L. J. Aceves (admitted *pro hac vice*)
Assistant Attorney General
Consumer Protection and Antitrust Unit
Vermont Attorney General's Office
109 State Street
Montpelier, VT 05609
Telephone: (802) 828-3170
Email: sarah.aceves@vermont.gov
*Attorney for Plaintiff State of Vermont*

/s/ David C. Smith
David C. Smith (admitted *pro hac vice*)
Assistant Attorney General
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0588
Facsimile: (804) 786-0122
Email: dsmith@oag.state.va.us
*Attorney for Plaintiff Commonwealth of Virginia*

/s/ Ashley A. Locke
Ashley A. Locke (admitted *pro hac vice*)
Assistant Attorney General
Antitrust Division
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 389-2420
Email: Ashley.Locke@atg.wa.gov
*Attorney for Plaintiff State of Washington*

/s/ Douglas L. Davis
Douglas L. Davis (admitted *pro hac vice*)
Senior Assistant Attorney General
Consumer Protection and Antitrust Section
West Virginia Office of Attorney General
P.O. Box 1789
Charleston, WV 25326
Telephone: (304) 558-8986
Fax: (304) 558-0184
Email: douglas.l.davis@wvago.gov
*Attorney for Plaintiff State of West Virginia*

/s/ Caitlin M. Madden
Caitlin M. Madden (admitted *pro hac vice*)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 267-1311
Email: caitlin.madden@wisdoj.gov
*Attorney for Plaintiff State of Wisconsin*

/s/ William T. Young
William T. Young
Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-7847
Email: william.young@wyo,gov
*Attorney for the Plaintiff State of Wyoming*