UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America et al., <br><br>                    Plaintiffs, <br><br> -against- <br><br> Live Nation Entertainment, Inc. and Ticketmaster L.L.C., <br><br>                    Defendants. | 24-CV-3973 (AS) <br><br> ORDER |

ARUN SUBRAMANIAN, United States District Judge:

The Court outlines its rulings on the parties' motions *in limine* below. To the extent any party wishes to be heard on any of these rulings, the Court will hear argument on them during tomorrow's final pretrial conference.

## LEGAL STANDARD

"Evidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 258 (S.D.N.Y. 2015) (internal quotation omitted).

## DISCUSSION

Plaintiffs' motions:

**MIL 1 (preclude reference to markets defined in 2010 merger litigation): GRANTED**. The fact that in its 2010 merger review, the government presented a different market definition 16 years ago is of limited, if any, relevance in this case. For one, the market may have shifted in the decade and a half since, and in any event, Live Nation doesn't dispute that there may be alternative markets and submarkets that count as a relevant antitrust market. But even if that wasn't the case, the government is within its rights to argue different theories in different litigation. The risk of jury confusion is strong, as jurors would not understand how litigation strategies are formed, which would require additional trial time to explore those collateral issues. This is unlike *Sullivan v. NFL*, where the First Circuit indicated that prior "judgments" (which is not what's at issue here) are admissible if "the conduct underlying those prior judgments had a direct, logical relationship to the conduct at issue in the present case." 34 F.3d 1091, 1113 (1st Cir. 1994). References to market definitions from the earlier merger litigation are excluded under Rules 402 and 403.

**MIL 2 (preclude consent decree testimony—monitor witness and associated documents): GRANTED.** The parties have not explained, at this juncture, why the consent decrees are relevant to this litigation. To be clear, both sides can reference facts that might have

implicated compliance with the decrees to the extent that those facts have independent relevance to the case. But the existence of the decrees, and whether Live Nation complied with them, are—absent further justification—unnecessary to address and raise a host of concerns concerning unfair prejudice, confusing the jury, and wasting time among other things. As Live Nation points out, if the consent decrees become a focus of the case, Live Nation fairly would want to admit evidence showing that the "Monitoring Trustee" found no violations of the amended decree. The Court envisions further disputes about the evidence and testimony that both sides would seek to admit on the decrees as well. Without a greater showing of relevance, plaintiffs' motion will be granted, and as further addressed below, defendants' parallel motion will be granted as well.

**MIL 3 (preclude evidence of unchallenged other mergers and 1990s investigation): GRANTED.** The Court reaches the same conclusion as it did on the first motion; this is of limited relevance, and its probative value is substantially outweighed by the danger of unfair prejudice. It is excluded under Rule 402 and 403. *See, e.g., Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 714 (4th Cir. 2021) (affirming district court's exclusion of prior DOJ inaction after merger investigation, noting "many factors may motivate such a decision, including the Department's limited resources"). True enough, resource constraints *may* not be at issue here, but that's not the point. The concern is that without collateral litigation about the reasons for prior governmental action or inaction (if such adjudication is even feasible), the jury may mistakenly believe that the acquisitions in question are legal based on the Department of Justice's prior actions (or inaction). *See, e.g., In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664 (7th Cir. 2002) (rejecting argument that "because the Justice Department has not moved against the alleged HFCS price-fixing conspiracy, there must not have been one"). What matters here are the underlying facts, not other proceedings about those facts that have no direct effect here. As for the LA Times article addressed in this motion, the Court doesn't know how this evidence would be admissible, and why it would be probative for some reason other than those addressed here, but the Court will take up any submission directed to this article if and when it is proposed to be raised.

**MIL 4 (preclude reference to statements made by non-party witnesses to enforcement agencies): DENIED.** Live Nation says it has evidence that some of plaintiffs' witnesses contacted government agencies seeking to encourage enforcement actions against Live Nation. The fact that the witnesses contacted those agencies is, at least on the record before the Court, potentially probative of bias and credibility. That they made statements to enforcement agencies alone is what's relevant; the argument that context is needed about the resulting action or inaction on the part of the agencies is without merit. What is important is they wanted the agencies to go after Live Nation, not what the agencies did or didn't do. At the end of the day, the Court doesn't think this is a big issue. In plaintiffs' direct examination of these witnesses, they will likely front the issue of the witnesses having contacted the government, and to the extent that plaintiffs portray the witnesses as being harmed by the conduct they allege, then the reason for that outreach would be self-evident and likely won't move the needle.

**MIL 5 (preclude lay testimony on monopoly power): GRANTED.** What constitutes monopoly margins and monopoly power is not the proper province of fact witness testimony.

**MIL 6 (preclude evidence or argument about the *It's My Party* case): GRANTED as unopposed.** Defendants state that they have no present intention to reference the case, and only plan to raise it if it becomes relevant based on the IMP founder's testimony. If Live Nation feels that plaintiffs have opened the door, it should seek a sidebar to seek leave to reference the case. But Live Nation should note that the Court doesn't plan to allow them to introduce the fact that the case was dismissed or that similar market definitions were rejected; the case's relevance would be limited to impeachment or bias.

**MIL 7 (preclude reference to treble damages, attorneys' fees, civil penalties, etc.): GRANTED,** as this is outside of the purview of the jury. The Court notes that it largely agrees with Live Nation on its similar motion, as discussed below.

Defendants' motions:

**MIL 1 (exclude evidence and/or argument that an individual heard about threats from someone else): DENIED as premature.** The Court, of course, will not allow plaintiffs to introduce testimony that is hearsay without an exception. But this motion is premature, since it's not clear what, exactly, would be at issue. Specifically, with respect to the win-loss information, some of that might be hearsay within hearsay that lacks an exception, but some of it likely is not, so the parties should raise this as it comes up or the Court will address it in the context of representative exhibits that plaintiffs plan to use.

The Court notes, however, that to the extent that plaintiffs seek to introduce evidence of a non-party's statements to show either the motive or state of mind of the speaker, Rule 803(3), or to show its effect on the listener (and not for the truth of the matter), Rule 801(c)(2), then that would potentially be admissible. *See, e.g., Discover Fin. Servs. v. Visa U.S.A. Inc.*, 2008 WL 4560707, at *1 (S.D.N.Y. Oct. 9, 2008) ("[T]estimony concerning the motivation of customers for ceasing to deal with a business is admissible under the 'state of mind' exception to the hearsay rule, Rule 803(3) of the Federal Rules of Evidence, provided that there is otherwise admissible proof that business was lost."); Advisory Committee's Note to Rule 801(c) (citing case approvingly that involved "letters of complaint from customers offered as a reason for cancellation of dealer's franchise, to rebut contention that franchise was revoked for refusal to finance sales through affiliated finance company," and noting "[t]he effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights").

However, the Court will ensure that third-party statements are brought in for these proper purposes, and not as a guise to bring in statements for the truth of the matter asserted with no proper exception. To avoid disruptions during trial, plaintiffs should make sure to lay a proper foundation for the admissibility of evidence and testimony that makes the applicability of a valid exception from the hearsay rule applicable.

**MIL 2 (exclude testimony about industry fears of LN): GRANTED IN PART.** The Court agrees with defendants that plaintiffs should not elicit testimony from witnesses about generalized industry fears. But venue witnesses, for example, can testify to their own fear.

3

Similarly, rival ticketers can explain why they inserted make-good clauses in their contract. And plaintiffs can ask why a witness harbors fear or had to enact a countermeasure. If the reason is what they heard from others, it would be admissible solely to explain the reason for their fear and for their course of action, but not for the truth of the matter. To the extent that Live Nation's argument is based on concerns that witnesses will not be testifying from personal knowledge, or be expressing improper opinion testimony, the Court observed in *United States v. Wirtz*, 357 F. Supp. 2d 1164 (D. Minn. 2005) that "personal knowledge can include 'inferences and opinions, as long as they are grounded in personal observations and experience.'" *Id*. at 1169 (quoting *United States v. Rodriguez,* 162 F.3d 135, 144 (1st Cir. 1998).

This kind of testimony is also permitted under Rule 701, which allows for lay opinion testimony where it is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of 702." *See Wirtz*, 357 F. Supp. 2d at 1169 (noting Rule 701 permits opinion testimony based on "'relevant historical or narrative facts that the witness has perceived,'" and that "'[w]hile the ordinary rule confines the testimony of a lay witness to concrete facts within his knowledge or observation, the Court may rightly exercise a certain amount of latitude in permitting a witness to state his conclusions based upon common knowledge or experience'" (quoting *United States v. Espino,* 317 F.3d 788, 797 (8th Cir. 2003)).

Plaintiffs should take care to make sure to lay a proper foundation and to structure their questions to stay within these guardrails.

**MIL 3 (exclude evidence from Hill related to content-shifting analysis): DENIED.** First, the Court denies this motion as an untimely *Daubert* motion. Independently, however, the testimony is relevant and admissible under Rule 702, Rule 402, and Rule 403. Specifically, Hill's analysis is intended to demonstrate that after switching ticketing from Ticketmaster to another provider, the number of Live Nation promoted shows decreased (and that they increased when a venue switched to Ticketmaster). Live Nation chides Hill for not considering the show-specific reasons why these changes may have occurred (for instance show, venue or market specific issues unrelated to the identity of the ticketer), but that is a factual dispute to be assessed at trial, not a valid challenge to the admissibility of Hill's analysis under the criteria set forth under Rule 402 or 702. In response to Hill's analysis, Live Nation's experts have explained what facts and information they believe that Hill overlooked, and Live Nation is further permitted to address the issue during Hill's cross-examination. But it is within Hill's province to have computed the data that he did, and to offer his expert conclusions about what the data shows.

**MIL 4 (exclude evidence and argument related to the consent decrees): GRANTED**, as with plaintiffs' second MIL and with the same caveats. While it is true that plaintiffs may address "market" or "commercial" realities, it is unclear from the parties' briefing why the consent decrees themselves matter, as opposed to the underlying conduct that Live Nation or other market participants either did or didn't engage in. Plaintiffs refer to the existence of the decrees affecting the willingness of some venues to leave Ticketmaster, but it's unclear why that awareness (as

opposed to what happened when venues left Ticketmaster, or why other venues didn't leave Ticketmaster) would be relevant to any issue in dispute at trial. Further, plaintiffs state in passing that the existence of the decrees show "motive and bias" if "[d]efendants' executives deny they engage in content steering," an argument that needs further development and would appear to be conditioned on testimony that hasn't been offered yet. Likewise, plaintiffs point to defendants' intent, stating that "[d]efendants were on notice that certain conduct was potentially illegal and that their internal and external communications and business decisions were subject to monitoring—and thus may have been modified or muted." It's unclear what plaintiffs are referring to here. Just as with all the motions in limine, it may be that some reference to the consent decrees may ultimately be permitted by the Court, with the proper context furnished, and plaintiffs can seek to revisit this issue during trial.

**MIL 5 (exclude evidence related to pre-2020 conduct): DENIED.** First, Live Nation concedes that no statute of limitation applies to the federal government's claims. Given that a motion *in limine* cannot be granted unless the evidence at issue is inadmissible on all potential grounds, that alone is enough to deny the motion. But even as to state damages (and UCL) claims, exclusion would be improper. Evidence from before the limitations period, such as evidence of acquisitions or other developments that contributed to the monopoly that existed during the limitations period would potentially be relevant to those claims. *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) (noting that "[a] statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period").

As for the issue of any potential prejudice, this can be directly addressed by clear jury instructions that make clear what time period a violation must have occurred in for purposes of the state claims, how the statutes of limitation apply in this context, and what evidence can be considered on those claims. *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("As the Supreme Court has frequently observed, the law recognizes a strong presumption that juries follow limiting instructions.").

**MIL 6 (exclude references to TM selling to brokers): DENIED without prejudice.** If Live Nation wants to point the finger at ticket brokers, and raise evidence showing that Ticketmaster combatted brokers while rival ticketers worked with them, then plaintiffs are entitled to argue that defendants sell to the brokers. Of course, any evidence along these lines needs a proper foundation, and any testimony shouldn't extend beyond what a witness can testify about based on personal knowledge and without speculating.

**MIL 7 (exclude evidence related to remedies): GRANTED in part.** The jury is not deciding what, if any, remedies will be imposed against Live Nation, and they will be instructed that the remedies should have no impact on their decision and that this will be decided, if necessary, in a separate proceeding. That's all that needs to be said; there doesn't need to be any description to the jury of what those remedies might be, as set forth in plaintiffs' proposed jury instruction. That being said, of course plaintiffs can consider evidence of "a world without Defendants' monopoly" or that "the combination of Live Nation and Ticketmaster gives the combined company

the ability and incentive to restrict competition." That kind of evidence and argument is within bounds (and indeed, isn't challenged by Live Nation). But that doesn't open the door to instructing the jury concerning the potential remedies in this case, especially where plaintiffs have expressly asked that those remedies not be determined by the jury.

**MIL 8 (exclude evidence related to alleged monopolies in markets outside the case): GRANTED.** Those are not relevant to the case. However, the Court agrees with plaintiffs that if Dr. Carlton refers to or assumes the lack of defendants' monopolies in the "outside markets," that would open the door for plaintiffs to rebut that.

**MIL 9 (exclude evidence of practices outside the US): DENIED.** Live Nation has made clear it wants to argue that the exclusive arrangements are procompetitive and desired by the venues. To the extent that they do, plaintiffs are entitled to show that venues in other jurisdictions benefit from nonexclusive arrangements.

**MIL 10 (exclude evidence of the NPA with a non-party): GRANTED IN PART AND DENIED IN PART.** Based on the government's response, it appears that most of the issues raised on this motion are off the table, or are premature to address at this time, and that the only live dispute concerns the government's ability to use a public non-prosecution agreement with a non-party and one of its exhibits ("Exhibit B"). The government claims that it wishes to question witnesses about the facts set forth in the exhibit, in that it details the non-party's agreement that it entered into agreements with Ticketmaster to push Ticketmaster to venues without disclosing the arrangement to venues. The government argues that the substance of the factual admissions is highly relevant to this monopolization case.

The Court agrees that the factual admissions themselves may be relevant to this case, but the government does not explain why evidence or argument concerning the non-prosecution agreement is relevant or probative, or why any probative value would substantially outweigh its potential unfair prejudice. Its arguments focus on the admissions underlying the agreement. Conveying those facts to the jury doesn't require discussing the non-prosecution agreement itself. To the extent that the government wishes to use the exhibit containing the non-party's admissions, with proper redactions, they can do so. As to the email chain that was forwarded to defendants' CEO, while it is unclear whether plaintiffs seek to use this evidence at trial, it is probative, not unfairly prejudicial, and if it is otherwise admissible, it may be used at trial.

To the extent that any further clarification is needed concerning this motion that involves any sealed information, the Court will address it at an appropriate juncture during the pretrial conference.

**MIL 11 (exclude evidence regarding executive compensation): GRANTED IN PART.** The Court agrees with defendants that in general the amount of executive's compensation has limited probative value measured against its potential prejudice. The jury will understand that Live Nation's executives have a vested interest in protecting their company's business model, and they can give that motive whatever weight they deem appropriate. But to the extent that defendants cite their lack of profitability, plaintiffs can cite the fact that Live Nation hit income or profitability

targets that triggered the executives' bonuses, as that goes to a specific issue—the true extent of the company's perceived profitability or income—that is hotly disputed in this case.

**MIL 12 (exclude reference to "Ticketmaster tax"): GRANTED IN PART.** The Court agrees that plaintiffs shouldn't use the phrase "Ticketmaster tax" unless it referring to how Ticketmaster's retained amounts are referred to in evidence that they plan to admit at trial. Plaintiffs can also explain, consistent with their expert's tax-incidence model, how Ticketmaster's retained amounts function as a "tax." Aside from this, to the extent that plaintiffs wish to apply their own moniker of the retained amounts as a "Ticketmaster Tax," the motion is granted, and plaintiffs should instead use a term like "Ticketmaster's share," "retained amounts," or something to that effect.

**MIL 13 (exclude the use of the word "monopoly" by lay witnesses): GRANTED.** The Court agrees that explaining the economic circumstances that lead to the characterization of Live Nation as a monopoly or not should be left to the experts, the Court in instructing the jury on the law, and the jury. The fact witnesses should testify as to facts, inferences, and opinions within their personal knowledge and as permitted by Rule 602 and 701. They can use lay terms to describe their perception of Live Nation's presence without using a legally charged world such as "monopoly" (e.g., "behemoth" or "massive market presence").

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 1014 and 1017.

SO ORDERED.

Dated: February 24, 2026
       New York, New York

                                                  ARUN SUBRAMANIAN
                                                  United States District Judge